UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE INDEMNITY COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; and ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | Civil Action No._____ |
| Plaintiffs, | **Demand for Jury Trial** |
| vs. | |
| ARIANNA IANNUCCILLI, D.C., INC.; ARIANNA IANNUCCILLI, D.C.; KIARA M. CAPALDI, D.C.; and AMY M. MALEK, D.C., | |
| Defendants. | |

## COMPLAINT

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company (collectively, "Allstate" and/or "plaintiffs"), by their attorneys SMITH & BRINK, P.C., hereby allege as follows.

## I.  INTRODUCTION

1. This case is about a chiropractic clinic and its owner, agents, representatives, and practitioners who worked in concert to defraud Allstate by submitting and causing to be submitted false and fraudulent medical records, bills, and invoices (collectively, "false medical documentation") through the U.S. Mail seeking reimbursement for chiropractic treatment that was not actually provided and, if rendered at all, was unlawful and medically unnecessary.

2. Defendant chiropractic clinic Arianna Iannuccilli, D.C., Inc.; owner Arianna Iannuccilli, D.C. ("Iannuccilli"); chiropractors Kiara M. Capaldi, D.C. ("Capaldi") and Amy M.

Malek, D.C. ("Malek") (collectively, the "defendants") knowingly engaged in a comprehensive insurance fraud scheme designed to obtain payments from Allstate for treatment that was never rendered, was medically unnecessary, and was not lawfully rendered.

3.      As detailed below, the treatment purportedly rendered at Arianna Iannuccilli, D.C., Inc. was unnecessary because (1) patients were unlawfully solicited to treat at Arianna Iannuccilli, D.C., Inc. when they were not actually in need of treatment; (2) the treatment was rendered based on a predetermined treatment protocol where the defendants prescribed the same treatment for multiple times a week regardless of each patient's age, medical history, and/or complaints; and (3) treatment was billed to Allstate that was never performed.

4.      Upon information and belief, Iannuccilli paid unlawful kickbacks to Rhode Island personal injury attorneys in exchange for patient referrals.

5.      Chiropractors in Rhode Island are prohibited from obtaining patients by, or profiting from the acts of, "agents or persons" and "agreeing to split or divide the fees received for professional services for any person for bringing to or referring a patient."  R.I. Gen. Laws § 5-37-5.1(11) and (12).

6.      During the course of Allstate's investigation culminating in the filing of this Complaint, patients at issue in this Complaint provided statements to Allstate confirming that Arianna Iannuccilli, D.C., Inc. obtained patients by way of Rhode Island personal injury attorneys, who referred their clients to Arianna Iannuccilli, D.C., Inc.

7.      In order to conceal their fraud, Iannuccilli, Capaldi, and Malek each authored chiropractic treatment records that willfully misrepresented that treatment was rendered to patients at issue in this Complaint when it was not and that the treatment rendered, if at all, was medically necessary.

8.      The State of Rhode Island confirms that chiropractors engage in "unprofessional conduct" each time he/she "willfully mak[es] and fil[es] false reports or records," "[m]ak[es] willful misrepresentations in treatments," "[f]ail[s] to maintain … standards related to proper utilization of services … and/or quality of care."  R.I. Gen. Laws § 5-37-5.1 (made applicable to chiropractors through R.I. Gen. Laws § 5-30-17).

9.      There is a strikingly similar pattern of diagnoses and treatment across all of the defendants' patient files.

10.      Each patient was assessed by the defendants as purportedly having extremely similar reports of complaints, objective findings, and assessments regardless of the type of accident and regardless of each patient's age, sex, and pre-accident condition.

11.      The chiropractic treatment that was allegedly delivered to each patient was not linked to a goal-oriented treatment approach and there was no evidence of a plan for discharge from ongoing treatment for the vast majority of the patients at issue herein, which is violative of the standard of care for chiropractors.

12.      The chiropractic care persisted without discharge for months without need for such extensive chiropractic treatment and even though the standard of care for the duration of chiropractic treatment is far less.

13.      This pattern supports that the defendants' main goal in treating patients was to perform as much treatment as early and often as possible, regardless of whether such treatment was reasonable and necessary, in order to inflate and bolster bills submitted to and paid by insurers like Allstate.

14.     Allstate reasonably relied on the defendants' false medical documentation to its detriment and paid significant sums of money to and for the benefit of the defendants as a result of the scheme to defraud detailed herein.

15.     Each of the defendants named herein conspired with one another to accomplish and to further the objectives of their fraudulent scheme, as detailed below.

16.     All of the acts and omissions of the defendants, described throughout this Complaint, were undertaken intentionally.

17.     The insurance fraud scheme perpetrated by the defendants was designed to, and did in fact, result in the payment of benefits from Allstate to and on behalf of the defendants.

18.     By this Complaint, and as detailed in each count set forth below, Allstate brings this action for: (1) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d); (2) fraudulent misrepresentation; (3) civil conspiracy; and (4) unjust enrichment.

19.     Allstate's claim for compensatory damages includes: (1) payments made directly to Arianna Iannuccilli, D.C., Inc. in reliance upon the defendants' false representations regarding the fact, lawfulness, and necessity of the services purportedly provided (i.e., first-party claims), (2) monies received by the defendants that were derived from Allstate's payments tendered to a patient's attorney or law firm in connection with the settlement of bodily injury claims that were based significantly on the defendants' misrepresentations concerning the patients' injuries and the fact, unlawfulness, and necessity of the services provided to address these injuries (i.e., third-party claims), (3) treble damages, (4) statutory interest, (5) costs, including but not limited to, the costs of claims handling and the cost of investigation to uncover the fraudulent scheme perpetrated by the defendants, and (6) attorney's fees.

4

20.     Allstate further seeks a declaration pursuant to 28 U.S.C. § 2201 that the defendants have no right to receive payment for any previously-denied and/or pending bills submitted to Allstate relating to the patients at issue in this Complaint (identified in Exhibit 1) whereas (1) the defendants billed Allstate for services and treatment that were not actually rendered and, if performed at all, were medically unnecessary; (2) the defendants engaged in unlawful practices, including the payment of kickbacks and *quid pro quo* referral agreements; (3) the defendants engaged in a pervasive pattern and practice of submitting false medical documentation through the U.S. Mail demanding payment from Allstate; and (4) the defendants billed Allstate for medical services that were performed pursuant to a predetermined protocol designed and implemented to increase their profits without regard for individual and actual patient need.

21.     As a result of the defendants' fraudulent billing scheme, Allstate has paid in excess of $755,253 to Arianna Iannuccilli, D.C., Inc. since 2010 related to the patients at issue herein.

## II.     THE PARTIES

### A.     PLAINTIFFS

22.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company are each corporations duly organized under the laws of the State of Illinois.

23.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company each have their respective principal places of business in Northbrook, Illinois.

24.     At all times relevant to this Complaint, each of the plaintiffs was authorized to conduct business and issue automobile insurance policies in the State of Rhode Island.

**B.     DEFENDANTS**

**1.     Arianna Iannuccilli, D.C., Inc.**

25.     Arianna Iannuccilli, D.C., Inc. is a Rhode Island Business Corporation with an original filing date of on or about December 31, 2002.

26.     Arianna Iannuccilli, D.C., Inc. is incorporated under the laws of Rhode Island and has its principal place of business in Providence, Rhode Island.

27.     At all times relevant to this Complaint, Iannuccilli was the President of Arianna Iannuccilli, D.C., Inc.

28.     At all times relevant to this Complaint, Iannuccilli exercised control over Arianna Iannuccilli, D.C., Inc.

29.     At all times relevant to this Complaint, Arianna Iannuccilli, D.C., Inc. rendered medically unnecessary and excessive treatment (if rendered at all), including but not limited to the patients and services listed in Exhibit 1.

**2.     Arianna Iannuccilli, D.C.**

30.     Arianna Iannuccilli, D.C. is a resident and citizen of the State of Rhode Island.

31.     Iannuccilli is a licensed chiropractor in the State of Rhode Island.

32.     At all times relevant to this Complaint, Iannuccilli was the President of Arianna Iannuccilli, D.C., Inc., as set out above.

33.     At all times relevant to this Complaint, Iannuccilli exercised control over Arianna Iannuccilli, D.C., Inc.

34.     Iannuccilli treated patients at Arianna Iannuccilli, D.C., Inc., including patients listed in Exhibit 1.

### 3.     Kiara M. Capaldi, D.C.

35.     Kiara M. Capaldi, D.C. is a resident and citizen of the State of Rhode Island.

36.     Capaldi is a licensed chiropractor in the State of Rhode Island.

37.     Capaldi treated patients at Arianna Iannuccilli, D.C., Inc., including patients listed in Exhibit 1.

### 4.     Amy M. Malek, D.C.

38.     Amy M. Malek, D.C. is a resident and citizen of the State of Rhode Island.

39.     Malek is a licensed chiropractor in the State of Rhode Island.

40.     Malek treated patients at Arianna Iannuccilli, D.C., Inc., including patients listed in Exhibit 1.

## III.     JURISDICTION AND VENUE

41.     Jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity of citizenship).

42.     Each plaintiff is a citizen of the State of Illinois for purposes of 28 U.S.C. § 1332.

43.     Arianna Iannuccilli, D.C., Inc. is a Rhode Island Business Corporation incorporated under the laws of Rhode Island.

44.     Arianna Iannuccilli, D.C., Inc.'s principal place of business is located in Providence, Rhode Island.

45.     Iannuccilli is a resident and citizen of the State of Rhode Island.

46.     Capaldi is a resident and citizen of the State of Rhode Island.

47.     Malek is a resident and citizen of the State of Rhode Island.

48.     Thus, the defendants are completely diverse from Allstate for the purposes of 28 U.S.C. § 1332 and each has substantial connections to the State of Rhode Island.

49.     Further, the amount in controversy, exclusive of interest and costs, exceeds $75,000, the sum set forth in 28 U.S.C. § 1332.

50.     Supplemental jurisdiction over Allstate's state law claims is proper pursuant to 28 U.S.C. § 1367.

51.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the vast majority of the acts at issue herein were carried out within the District of Rhode Island.

## IV.    RELEVANT RHODE ISLAND CHIROPRACTIC STATUTES

52.     "[T]he practice of 'chiropractic medicine' is defined as the science and art of mechanical and material healing" using "a system of palpating and adjusting the articulations of the human spinal column and its appendages, by hand and electro-mechanical appliances, and the employment of corrective orthopedics and dietetics for the elimination of the cause of disease."  R.I. Gen. Laws § 5-30-1.

53.     The State of Rhode Island states that Chiropractors engage in "unprofessional conduct" each time he/she "willfully mak[es] and fil[es] false reports or records," "[m]ak[es] willful misrepresentations in treatments," "[f]ail[s] to maintain … standards related to proper utilization of services … and/or quality of care."  R.I. Gen. Laws § 5-37-5.1 (made applicable to chiropractors through R.I. Gen. Laws § 5-30-17).

54.     Chiropractors are also prohibited from obtaining patients by, or profiting from the acts of, "agents or persons" and "agreeing to split or divide the fees received for professional services for any person for bringing to or referring a patient."  R.I. Gen. Laws § 5-37-5.1(11) and (12).

## V.     BILLING FOR SERVICES NOT RENDERED

55.     The defendants routinely billed Allstate for services that they did not actually render, which is clearly fraudulent.

56.     For example, according to a statement provided to Allstate by Patient A.R. (Claim No. 0242897899)[1], he never received treatment on consecutive days at Arianna Iannuccilli, D.C., Inc.

57.     However, Allstate was billed by Arianna Iannuccilli, D.C., Inc. for treatment purportedly rendered to A.R. on January 3, 2013; January 4, 2013; January 10, 2013; January 11, 2013; January 15, 2013; and January 16, 2013.

58.     According to A.R.'s own statement, he did not treat at Arianna Iannuccilli, D.C., Inc. on January 4, 2013; January 11, 2013; or January 16, 2013.

59.     The bills submitted to Allstate by Arianna Iannuccilli, D.C., Inc. for January 4, 2013; January 11, 2013; and January 16, 2013 constitute billing for services that were never rendered, which is unlawful and fraudulent.

60.     In addition to the above, Malek has submitted bills to Allstate seeking payment for treatment rendered to patients at two separate chiropractic clinics on the same date of service.

61.     In other words, Malek maintains that she worked at two different chiropractic clinics while having enough time in the day to bill Allstate for comprehensive patient examinations at each.

62.     Furthermore, Allstate received bills from Arianna Iannuccilli, D.C., Inc. for treatment allegedly provided by Malek during a time in which Malek was not present in the State of Rhode Island.

---

[1] To protect the confidentiality of the patients at issue herein, Allstate hereinafter refers to each by his or her initials and Allstate claim number.

63.     The defendants also billed Allstate at a volume of treatment that was not possible on some dates and extremely improbable on other dates given the number of patients allegedly treated and the type of treatment allegedly rendered, including some treatment that has a minimum time requirement.

64.     All of the claims submitted by the defendants to Allstate through the U.S. Mail seeking reimbursement for services and treatment that never actually occurred are fraudulent.

**A.     PATIENT EXAMINATIONS WERE NOT PROVIDED**

65.     Arianna Iannuccilli, D.C., Inc. (by and through Iannuccilli, Capaldi, and Malek) frequently billed Allstate for patient examinations that were not actually provided to the patients at issue in this Complaint.

66.     The defendants' pervasive pattern of submitting demands for payment of services that were not provided is indicative of their goal to submit as many claims for payment as possible regardless of whether the treatment was actually rendered and whether it was medically necessary (discussed in detail *infra*).

67.     Patients at issue in this Complaint have confirmed to Allstate that no chiropractor at Arianna Iannuccilli, D.C., Inc. performed an initial or follow-up examination even though Allstate was billed for these examinations.

68.     Iannuccilli, Capaldi, and Malek each engaged in "unprofessional conduct" every time Arianna Iannuccilli, D.C., Inc. billed Allstate for patient examinations that were falsely supported by chiropractic records signed by Iannuccilli, Capaldi, and Malek in an attempt to collect fees for services that were not rendered.  *See* R.I. Gen. Laws § 5-37-5.1(16).

69.     When an individual has been in a motor vehicle accident and complains of neck and back pain, a licensed healthcare professional must obtain a history and perform an examination to arrive at a legitimate diagnosis.

70.     The licensed healthcare professional must also engage in medical decision-making to design a legitimate treatment plan that is tailored to the unique needs of each patient.

71.     Examination, evaluation, and the establishment of a diagnosis are all part of the process that helps healthcare providers determine an appropriate treatment plan specifically designed to aid each individual patient's care, recovery, and rehabilitation.

72.     The evaluation and management of a patient is billed through Current Procedural Terminology (CPT) Codes for office visits/examinations.

73.     Office visits/examinations are billed at five different levels, with level five examinations being the most comprehensive and expensive, and usually lasting for 60 minutes according to the American Medical Association, which publishes CPT Codes.

74.     Several of the patients at issue in this Complaint have informed Allstate that no examination occurred during the patient's initial office visit or any subsequent office visit at Arianna Iannuccilli, D.C., Inc.

75.     However, Arianna Iannuccilli, D.C., Inc. almost always billed Allstate for at least a level four examination for initial and follow up office visits (i.e., CPT Codes 99204, 99214, and 99215) for each patient at issue in this Complaint.  *See* Exhibit 1.

76.     By creating medical bills that included CPT Codes for office visits and then causing and knowing such bills to be mailed to Allstate through the U.S. Mail, the defendants (mis)represented to Allstate that the invoiced medical services were in fact rendered to patients.

77.     The defendants submitted reimbursement claims to Allstate through the U.S. Mail seeking payment for patient examinations, identified using CPT Codes 99204 (New patient office visit, Level 4), 99214 (Established patient office visit, Level 4), and 99215 (Established patient office visit, Level 5), that were never performed relating to patients at issue in this Complaint.

78.     By way of example, Arianna Iannuccilli, D.C., Inc. submitted bills to Allstate using CPT Codes 99204 (New patient office visit, Level 4), 99215 (Established patient office visit, Level 5) for patient examinations purportedly rendered to Patient J.R. (Claim No. 0379596792).

79.     Arianna Iannuccilli, D.C., Inc. billed Allstate a total of $1,590.00 for the purported one (1) new patient office visit (CPT Code 99204) on August 21, 2015 and three (3) established patient visits (CPT Code 99215) from September 21, 2015 through November 18, 2015 relative to Patient J.R.

80.     However, Patient J.R. testified that the billed for treatment was not provided by Arianna Iannuccilli, D.C., Inc.:

> Q:      So the first time you went [to Arianna Iannuccilli, D.C., Inc.], you told the doctor what happened, correct?
>
> A:      Exactly.
>
> Q:      Did she – did you describe to her what parts of your body hurt?
>
> A:      Yes.
>
> Q:      Did she examine your body, did she conduct an examination of you?
>
> A:      No.

81.     Thus, Arianna Iannuccilli, D.C., Inc. billed Allstate for services that were never performed.

82.     As such, Allstate is not obligated to pay any pending bills for office visits relating to patients at issue in this Complaint (identified in Exhibit 1) that contain misrepresentations and is entitled to reimbursement for the fraudulent office visit bills for which it has already tendered payment.

### 1.     Exemplar Claims

83.     The following patients exemplify the defendants' billing for examinations/office visits not performed.

#### a.     Patient J.M. (Claim No. 0365846542)

84.     Patient J.M. was allegedly involved in a motor vehicle accident on or about April 15, 2015.

85.     Patient J.M. presented to the office of Arianna Iannuccilli, D.C., Inc. on April 22, 2015.

86.     According to the medical record and bill submitted by Arianna Iannuccilli, D.C., Inc., patient J.M. allegedly received a level four initial examination from Iannuccilli on April 22, 2015.

87.     However, according to J.M.'s own statements to Allstate, no initial evaluation was ever performed on J.M. at Arianna Iannuccilli, D.C., Inc.

88.     Notwithstanding that no examination of J.M. occurred, Iannuccilli represented to Allstate in her April 22, 2015 "Initial Evaluation" record that she examined J.M. and made the following purported findings: 1) cervical upper thoracic musculature reveals spasm; 2) cervical flexion, rotation and extension restriction; 3) trigger points in the spienius capitis, trapezius and

rhomboid muscles; 4) shoulder range of motion restriction; and 5) shoulder depression is positive bilaterally.

89.     As no examination occurred, these findings were false and made solely to bolster J.M.'s claim and induce Allstate to make payment.

90.     Arianna Iannuccilli, D.C., Inc. generated a bill seeking payment for a "new patient exam" that was purportedly performed on April 22, 2015 using CPT Code 99204.

91.     Notwithstanding Iannuccilli's fabricated initial evaluation medical record, this comprehensive examination never occurred, as evidenced by J.M.'s own statements to Allstate.

92.     Arianna Iannuccilli, D.C., Inc.'s bill was submitted to J.M.'s personal injury attorney, who in turn used the U.S. Mail to submit that bill to Allstate demanding payment for the patient examination as part of a settlement demand.

93.     Arianna Iannuccilli, D.C., Inc. and Iannuccilli were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to J.M. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mail.

94.     However, the treatment purportedly rendered by Iannuccilli is considered "unprofessional conduct" as this defendant: 1) fabricated medical records to falsely claim a comprehensive patient examination was performed on J.M.; and 2) fabricated medical records to falsely claim treatment was provided within the "minimal standards of acceptable and prevailing medical practice."  *See* R.I. Gen. Laws § 5-37-5.1.

95.     Allstate is not obligated to pay for services that were never rendered.

96.     Allstate relied upon Arianna Iannuccilli, D.C., Inc.'s medical records and bills in adjusting the claim.

**b.      Patient L.W.  (Claim No. 0402393854)**

97.    Patient L.W. was allegedly involved in a motor vehicle accident on or about August 4, 2015.

98.    Patient L.W. presented to the office of Arianna Iannuccilli, D.C., Inc. on August 6, 2015.

99.    According to the medical record and bill submitted by Arianna Iannuccilli, D.C., Inc., patient L.W. allegedly received a level four initial examination from Malek on August 6, 2015.

100.    However, according to L.W.'s own statements to Allstate, no initial evaluation was ever performed on L.W. at Arianna Iannuccilli, D.C., Inc.

101.    Notwithstanding that no examination of L.W. occurred, Malek represented to Allstate in her August 6, 2015 "Initial Evaluation" record that she examined L.W. and made the following purported findings: 1) cervical range of motion reveals pain and a pulling sensation with flexion and rotational movements and lateral flexion movements; 2) shoulder depression test is positive bilaterally; and 3) lumbar range of motion is painfully restricted with extension, flexion, and rotational movements.

102.    As no examination occurred, these findings were false and made solely to bolster L.W.'s claim and induce Allstate to make payment.

103.    Arianna Iannuccilli, D.C., Inc. generated a bill seeking payment for a "new patient exam" that was purportedly performed on August 6, 2015 using CPT Code 99204.

104.    Notwithstanding Malek's fabricated initial evaluation medical record, this comprehensive examination never occurred, as evidenced by L.W.'s own statements to Allstate.

105.    Arianna Iannuccilli, D.C., Inc.'s bill was submitted to L.W.'s personal injury attorney, who in turn used the U.S. Mail to submit that bill to Allstate demanding payment for the patient examination as part of a settlement demand.

106.    Arianna Iannuccilli, D.C., Inc. and Malek were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to L.W. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mail.

107.    However, the treatment purportedly rendered by Malek is considered "unprofessional conduct" as this defendant: 1) fabricated medical records to falsely claim a comprehensive patient examination was performed on L.W.; and 2) fabricated medical records to falsely claim treatment was provided within the "minimal standards of acceptable and prevailing medical practice." *See* R.I. Gen. Laws § 5-37-5.1.

108.    Allstate is not obligated to pay for services that were never rendered.

109.    Allstate relied upon Arianna Iannuccilli, D.C., Inc.'s medical records and bills in adjusting the claim.

### c.    Patient O.L.   (Claim No. 0203689054)

110.    Patient O.L. was allegedly involved in a motor vehicle accident on or about May 22, 2011.

111.    Patient O.L. presented to the office of Arianna Iannuccilli, D.C., Inc. on May 25, 2011.

112.    According to the medical record and bill submitted by Arianna Iannuccilli, D.C., Inc., patient O.L. allegedly received a level four initial examination from Malek on May 25, 2011.

16

113.    However, according to O.L.'s own statements to Allstate, no initial evaluation was ever performed on O.L. at Arianna Iannuccilli, D.C., Inc.

114.    Notwithstanding that no examination of O.L. occurred, Malek represented to Allstate in her May 25, 2011 "Initial Evaluation" record that she examined O.L. and made the following purported findings: 1) cervical range of motion was restricted with flexion and rotational movements as well as mildly with lateral flexion and extension movements; 2) shoulder depression test is positive bilaterally; and 3) thoracolumbar range of motion was restricted with extension, flexion, and rotational movements.

115.    As no examination occurred, these findings were false and made solely to bolster O.L.'s claim and induce Allstate to make payment.

116.    Arianna Iannuccilli, D.C., Inc. generated a bill seeking payment for a "new patient exam" purportedly performed on May 25, 2011 using CPT Code 99204.

117.    Notwithstanding Malek's fabricated initial evaluation medical records, this comprehensive examination never occurred, as evidenced by O.L.'s own statements to Allstate.

118.    Arianna Iannuccilli, D.C., Inc.'s bill was submitted to O.L.'s personal injury attorney, who in turn used the U.S. Mail to submit that bill to Allstate demanding payment for the patient examination as part of a settlement demand.

119.    Arianna Iannuccilli, D.C., Inc. and Malek were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to O.L. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mail.

120.    However, the treatment purportedly rendered by Malek is considered "unprofessional conduct" as this defendant: 1) fabricated medical records to falsely claim a

comprehensive patient examination was performed on O.L.; and 2) fabricated medical records to falsely claim treatment was provided within the "minimal standards of acceptable and prevailing medical practice." *See* R.I. Gen. Laws § 5-37-5.1.

121.   In reliance on the statements made and medical records contained in the settlement demand letter submitted on O.L.'s behalf, and on the services purportedly rendered to O.L. by the defendants, Allstate tendered a settlement payment on behalf of O.L. in the amount of $19,500.00, $3,817.00 of which was attributable to the defendants' bills for their purported treatment of O.L.

### d.   Patient D.F.   (Claim No. 0204654669)

122.   Patient D.F. was allegedly involved in a motor vehicle accident on or about May 26, 2011.

123.   Patient D.F. presented to the office of Arianna Iannuccilli, D.C., Inc. on June 7, 2011.

124.   According to the medical record and bill submitted by Arianna Iannuccilli, D.C., Inc., patient D.F. allegedly received a level four initial examination from Capaldi on June 7, 2011.

125.   However, according to D.F.'s own statements to Allstate, no initial evaluation was ever performed on D.F. at Arianna Iannuccilli, D.C., Inc.

126.   Notwithstanding that no examination of D.F. occurred, Capaldi represented to Allstate in her June 7, 2011 "Initial Evaluation" record that she examined D.F. and made the following purported findings: 1) cervical range of motion being grossly limited and painful in all directions; 2) lumbar range of motion was grossly limited and produced moderate to severe pain

in all ranges of motion; and 3) cervicothoracic spine revealed severe spasm and rigidity throughout the paracervical and suprascapular regions.

127.    As no examination occurred, these findings were false and made solely to bolster D.F.'s claim and induce Allstate to make payment.

128.    Arianna Iannuccilli, D.C., Inc. generated a bill seeking payment for a "new patient exam" that was purportedly performed on June 7, 2011 using CPT Code 99204.

129.    Notwithstanding Capaldi's fabricated initial evaluation medical record, this comprehensive examination never occurred, as evidenced by D.F.'s own statements to Allstate.

130.    Arianna Iannuccilli, D.C., Inc. submitted its bill to Allstate through the U.S. Mail demanding payment for the patient examination that never occurred.

131.    Allstate is not obligated to pay for services that were never rendered.

132.    Allstate relied upon Arianna Iannuccilli, D.C., Inc.'s submissions in adjusting the claim.

     **e.**  **Patient J.C.**  **(Claim No. 0172929283)**

133.    Patient J.C. was allegedly involved in a motor vehicle accident on or about July 16, 2010.

134.    Patient J.C. presented to the office of Arianna Iannuccilli, D.C., Inc. on August 16, 2010.

135.    According to the medical records and bills submitted by Arianna Iannuccilli, D.C., Inc., patient J.C. allegedly received a level four initial examination from Malek on August 16, 2010; a level five follow-up examination from Iannuccilli on September 15, 2010; a level five follow-up examination from Capaldi on October 15, 2010; and a level five follow-up examination from Malek on November 12, 2010.

136.    However, according to J.C.'s own statements to Allstate, she never received a comprehensive evaluation at Arianna Iannuccilli, D.C., Inc.

137.    Notwithstanding that no examinations of J.C. occurred:

a.    Malek represented to Allstate in her August 16, 2010 "Initial Evaluation" record that she examined J.C. and made the following purported findings: 1) lumbar range of motion was restricted and painful through all planes of movement, however pain was only mild with rotational movements, 2) cervical range of motion was within normal limits, however there was a pulling sensation into the upper back with right rotation and flexion movements, 3) shoulder depression test was positive bilaterally, and 4) spasm was noted in the lower thoracic and lumbar paraspinal region, quadratus lumborum muscles, rhomboid muscles, trapezius muscles, and teres muscles;

b.    Iannuccilli represented to Allstate in her September 15, 2010 "Reevaluation" record that she examined J.C. and made the purported following findings: 1) spasm in the thoracic and lumbar musculature, 2) there were trigger points in the erector spinae muscles, 3) hypertension test was positive, 4) Kemp's test was positive, and 5) spinal fixations were observed at T2, T6, T7, T12, L3, L4, and L5;

c.    Malek represented to Allstate in her October 15, 2010 "Reevaluation" record that she examined J.C. and made the purported following findings: 1) active thoracolumbar range of motion produced pain on extension, 2) Kemp's test was positive bilaterally for localized pain in the lumbar spine, 3) straight leg raise was negative, 4) manual palpation revealed spasm in the thoracolumbar erector spinae muscles and bilateral quadratus lumborum muscles, and 5) spinal fixations were observed at T4, T5, T8, T9, L3, and L4; and

d.    Malek represented to Allstate in her November 12, 2010 "Final Evaluation" record that she examined J.C. and made the purported following findings: 1) active thoracolumbar range of motion was within normal limits and pain-free through all planes of movement, 2) Kemp's test was negative bilaterally, 3) Yeoman's test was negative bilaterally, 4) active cervical range of motion was within

normal limits, 5) shoulder depression test was negative bilaterally, 6) there was no appreciable spasm in the cervical, thoracic, or lumbar paraspinal regions, 7) there was a latent myofascial trigger point in the right teres muscle, and 8) spinal fixations observed at T4, T6, T10, L4, and L5.

138.    As no examinations occurred, these findings were false and made solely to bolster J.C.'s claim and induce Allstate to make payment.

139.    Arianna Iannuccilli, D.C., Inc. generated bills seeking payments for a "new patient exam" purportedly performed on August 16, 2010 using CPT Code 99204 and three (3) level five follow-up examinations purportedly performed on September 15, 2010, October 15, 2010, and November 12, 2010 using CPT Code 99215 for each date of service.

140.    Notwithstanding Iannuccilli's, Malek's, and Capaldi's fabricated medical records, these comprehensive examinations never occurred, as evidenced by J.C.'s own statements to Allstate.

141.    Arianna Iannuccilli, D.C., Inc.'s bills were submitted to J.C.'s personal injury attorney, who in turn used the U.S. Mail to submit that bill to Allstate demanding payment for the patient examination as part of a settlement demand.

142.    Arianna Iannuccilli, D.C., Inc., Iannuccilli, Malek, and Capaldi were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to J.C. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mails.

143.    Allstate is not obligated to pay for services that were never rendered.

144.    Allstate relied upon Arianna Iannuccilli, D.C., Inc.'s medical records and bills in adjusting the claim.

**f.      Patient J.M.   (Claim No. 0219299877)**

145.    Patient J.M. was allegedly involved in a motor vehicle accident on or about September 22, 2011.

146.    Patient J.M. presented to the office of Arianna Iannuccilli, D.C., Inc. on September 28, 2011.

147.    According to the medical record and bill submitted by Arianna Iannuccilli, D.C., Inc., patient J.M. allegedly received a level four initial examination from Malek on September 28, 2011; a level five follow-up examination from Iannuccilli on October 28, 2011; a level four follow-up examination from Malek on December 7, 2011; and a level five follow-up examination from Malek on January 18, 2012.

148.    However, according to J.M.'s own statements to Allstate, he never received a comprehensive examination at Arianna Iannuccilli, D.C., Inc.

149.    Notwithstanding that no examinations of J.M. occurred:

a.      Malek represented to Allstate in her September 28, 2011 "Initial Evaluation" record that she examined J.M. and made the following purported findings: 1) thoracolumbar range of motion was restricted with flexion and rotational movements, 2) generalized pain in the lower back bilaterally as well as tension in the hamstrings, and 3) left shoulder range of motion was painful with flexion, abduction, adduction, and mildly with internal and external rotational movements;

b.      Iannuccilli represented to Allstate in her October 28, 2011 "Reevaluation" record that she examined J.M. and made the following purported findings: 1) there was spasm in the lumbar musculature, 2) lumbar flexion was restricted, 3) left shoulder ranges of motion were restricted in external rotation and abduction, 4) shoulder depression test was positive on the left, 5) there was spasm in the cervical region, 6) there were trigger points in the left splenius capitis muscle and left quadratus lumborum muscle, and 7)

spinal fixations observed at C4, C5, C6, T7, T8, T9, L3, L4, and L5;

c.   Malek represented to Allstate in her December 7, 2011 "Reevaluation" record that she examined J.M. and made the following purported findings: 1) thoracolumbar range of motion was restricted with flexion movements; 2) Kemp's test was positive bilaterally, 3) straight leg raise was negative, 4) there was spasm in the thoracolumbar erector spinae muscles, levator scapular muscles, rhomboid muscles, and left teres muscle, 5) shoulder depression test was positive for mild pain on the left, 6) left shoulder range of motion was within normal limits, and 7) spinal fixations observed at C5, C7, T2, T4, T5, L2, L5, and S1; and

d.   Malek represented to Allstate in her January 18, 2012 "Final Evaluation" record that she examined J.M. and made the following purported findings: 1) thoracolumbar range of motion was full and pain-free through all planes of movement, 2) Kemp's test was negative bilaterally, 3) straight leg raise was negative bilaterally, 4) there was no appreciative spasm in the cervical, thoracic, or lumbar paraspinal regions, 5) there was a latent myofascial trigger point in the left teres muscle, 6) left shoulder range of motion was within normal limits, 7) supraspinatus press test was negative on the left, and 8) spinal fixations noted at C5, C7, T3, T6, T7, L4, and L5.

150.   As no examinations occurred, these findings were false and made solely to bolster J.M.'s claim and induce Allstate to make payment.

151.   Arianna Iannuccilli, D.C., Inc. generated bills seeking payments for a "new patient exam" purportedly performed on September 28, 2011 using CPT Code 99204; a comprehensive level four follow-up examination purportedly performed on December 7, 2011 using CPT Code 99214; and two comprehensive level five follow-up examinations purportedly performed on October 28, 2011 and January 18, 2012 using CPT Code 99215 for both dates of service.

152.    Notwithstanding Malek's and Iannuccilli's fabricated medical records, these comprehensive examinations never occurred, as evidenced by J.M.'s own statements to Allstate.

153.    Arianna Iannuccilli, D.C., Inc.'s bills were submitted to J.M.'s personal injury attorney, who in turn used the U.S. Mail to submit these bills to Allstate demanding payment for the patient examinations as part of a settlement demand.

154.    Arianna Iannuccilli, D.C., Inc., Iannuccilli, and Malek were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to J.M. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mails.

155.    Allstate relied upon Arianna Iannuccilli, D.C., Inc.'s medical records and bills in adjusting the claim.

### g.    Patient C.G.   (Claim No. 0204654669)

156.    Patient C.G. was allegedly involved in a motor vehicle accident on or about May 26, 2011.

157.    Patient C.G. presented to the office of Arianna Iannuccilli, D.C., Inc. on June 7, 2011.

158.    According to the medical records and bills submitted by Arianna Iannuccilli, D.C., Inc., patient C.G. allegedly received a level four initial examination from Capaldi on June 7, 2011; a level five follow-up examination from Capaldi on July 5, 2011; a level five follow-up examination from Capaldi on August 2, 2011; and a level five follow-up examination from Malek on September 1, 2011.

159.    However, according to C.G.'s own statements to Allstate, he never received a comprehensive examination at Arianna Iannuccilli, D.C., Inc.

24

160. Notwithstanding that no examinations of C.G. occurred:

a.   Capaldi represented to Allstate in her June 7, 2011 "Initial Evaluation" record that she examined C.G. and made the following purported findings: 1) cervical range of motion was grossly limited and produced moderate pain in all ranges of motion, 2) O'Donoghue's test was positive for pain in all directions on restricted ranges of motion, 3) Foraminal compression test was positive for a shooting pain into the shoulder area bilaterally, 4) moderate tenderness and spasm was noted in the levator scapulae muscles, suboccipital muscles, scalene muscles, and cervicothoracic erector spinae muscles, 5) lumbar range of motion was grossly limited and produced moderate pain in all directions, and 6) spasm and tenderness was noted throughout the thoracic erector spinae muscles, quadratus lumborum muscles, and gluteus medius muscles;

b.   Capaldi represented to Allstate in her July 5, 2011 "Reevaluation" record that she examined C.G. and made the following purported findings: 1) cervical range of motion produced pain at the end range of flexion and extension, 2) O'Donoghue's test was negative, 3) Foraminal compression test was positive for pain in the cervical spine, 4) active lumbar range of motion produced pain at the end range of extension and bilateral rotational movements, 5) Kemp's test was positive bilaterally for pain in the lumbar spine, 6) manual palpation revealed spasm in the cervical erector spinae muscles, mid trapezius muscles, rhomboid muscles, thoracolumbar erector spinae muscles, and bilateral quadratus lumborum muscles, and 7) spinal fixations noted at C2, C3, C4, C5, T8, T9, L3, L4, and L5;

c.   Capaldi represented to Allstate in her August 2, 2011 "Reevaluation" record that she examined C.G. and made the following purported findings: 1) cervical range of motion produced mild pain at the end range of extension, 2) active lumbar range of motion produced pain at the end range of extension, 3) Kemp's test was positive bilaterally for pain in the lumbar spine, 4) manual palpation revealed spasm in the cervical erector spinae muscles, mid trapezius muscles, levator scapulae muscles, rhomboid muscles, and lumbar erector spinae muscles, 5) active left ankle range of motion produced pain in all ranges, 6) tenderness noted in the medial collateral ligament of the left ankle, and 7)

spinal fixations observed at C3, C4, T4, T5, T8, T9, L3, and L4; and

d.    Malek represented to Allstate in her September 1, 2011 "Final Evaluation" record that she examined C.G. and made the following purported findings: 1) there was no appreciative spasm in the cervical, thoracic, or lumbar paraspinal regions, 2) thoracolumbar range of motion was within normal limits and pain-free through all planes of movement, 3) Kemp's test was negative bilaterally, 4) there was a latent myofascial trigger point in the right trapezius muscle, 5) cervical range of motion was within normal limits, 6) shoulder depression test was negative, 7) left ankle range of motion was within normal limits, and 8) spinal fixations noted at C2, C5, T3, T4, T7, L4, and L5.

161.    As no examinations occurred, these findings were false and made solely to bolster C.G.'s claim and induce Allstate to make payment.

162.    Arianna Iannuccilli, D.C., Inc. generated bills seeking payments for a "new patient exam" purportedly performed on June 7, 2011 using CPT Code 99204 and three comprehensive level five follow-up examinations purportedly performed on July 5, 2011, August 2, 2011, and September 1, 2011 using CPT Code 99215 for each date of service.

163.    Notwithstanding Capaldi's and Malek's fabricated medical records, these comprehensive examinations never occurred, as evidenced by C.G.'s own statements to Allstate.

164.    Arianna Iannuccilli, D.C., Inc. submitted its bills to Allstate through the U.S. Mail demanding payment for patient examinations that never occurred.

165.    Allstate relied upon Arianna Iannuccilli, D.C., Inc.'s submissions in adjusting the claim.

### B.   CHIROPRACTIC MANIPULATIONS WERE NOT RENDERED TO PATIENTS

166.    The defendants submitted bills to Allstate through the U.S. Mail seeking payment for chiropractic manipulations, identified using CPT Codes 98940 ("*Chiropractic manipulative*

*treatment (CMT); spinal, 1-2 regions"*) and 98941 (*"Chiropractic manipulative treatment (CMT); spinal, 3-4 regions"*), that were never rendered to patients at issue in this Complaint.

167.    Arianna Iannuccilli, D.C., Inc. (by and through Iannuccilli, Capaldi, and Malek) frequently billed Allstate for chiropractic manipulations that were not actually provided to the patients at issue in this Complaint.

168.    Several patients at issue in this Complaint have stated that they received chiropractic manipulation, if at all, during only one office visit to Arianna Iannuccilli, D.C., Inc. despite Allstate being billed for several dates of service.

169.    Iannuccilli, Capaldi, and Malek each engaged in "unprofessional conduct" by their "filing of false statements for [the] collection of fees for which services [were] not rendered." *See* R.I. Gen. Laws §5-37-5.1(16).

170.    By way of example, Arianna Iannuccilli, D.C., Inc. submitted bills to Allstate using CPT Codes 98940 (*"Chiropractic manipulative treatment (CMT); spinal, 1-2 regions"*) and 98941 (*"Chiropractic manipulative treatment (CMT); spinal, 3-4 regions"*) for chiropractic adjustments purportedly rendered to Patient J.R.

171.    Arianna Iannuccilli, D.C., Inc. billed Allstate a total of $6,250.00 for chiropractic manipulations allegedly rendered to Patient J.R. from August 24, 2015 through November 11, 2015.

172.    As discussed *supra*, patient J.R. testified that he did not receive the patient examinations billed to Allstate by the defendants.

173.    Moreover, patient J.R. testified that he only received chiropractic manipulations during one visit:

> Q:    Do you remember her manipulating your back, did she ever
>        move your back, physically move your back?

A:      Yes, my back and my neck, she took my head and –

Q:      She would twist your head?

A:      Yeah, it even cracked.

Q:      Did she do that every single time you went to see her or did
        she just do it once in awhile [sic]?

A:      She did it only one time.

174.    However, the defendants billed Allstate for a total of twenty (20) dates of service

claiming CMT was performed on Patient J.R.

175.    As an another example, patient Y.S. (Claim No. 0225052133) stated to Allstate

that not only did she never receive a comprehensive examination at Arianna Iannuccilli, D.C.,

Inc., she never received the billed-for adjustments to her spine either.

176.    Arianna Iannuccilli, D.C., Inc. billed Allstate for one comprehensive level four

initial examination purportedly performed on October 28, 2011 using CPT Code 99204; one

comprehensive level five follow-up examination purportedly performed on November 28, 2011;

and two comprehensive level five follow-up examinations purportedly performed on January 9,

2012 and January 30, 2012 using CPT Code 99215 for both dates of service.

177.    Arianna Iannuccilli, D.C., Inc. also billed Allstate $900.00 for the fifteen (15)

instances of CMT that were never performed on Y.S.

178.    As evidenced by Y.S.'s own statements, these comprehensive examinations and

CMT never occurred.

179.    Allstate relied on Arianna Iannuccilli, D.C., Inc.'s medical records and bills

falsely attesting that these services were provided to Y.S. to its detriment.

180.    Patient A.F. (Claim No. 0257274324) stated to Allstate that in addition to never receiving comprehensive examinations, she also never received the spinal adjustments billed to Allstate by the defendants until her last few visits.

181.    Arianna Iannuccilli, D.C., Inc. billed Allstate for one comprehensive level four initial examination purportedly performed on August 22, 2012 using CPT Code 99204 and one comprehensive level five follow-up examination purportedly performed on September 21, 2012 using CPT Code 99215.

182.    Arianna Iannuccilli, D.C., Inc. billed Allstate $900.00 for the fifteen (15) instances of CMT that were in fact never performed on A.F. and these bills were mailed to Allstate.

183.    As evidenced by A.F.'s own statements, these comprehensive examinations and CMT never occurred.

184.    Allstate relied on Arianna Iannuccilli, D.C., Inc.'s medical records and bills falsely attesting that these services were provided to A.F. to its detriment.

C.    **HIGHLY IMPROBABLE VOLUME OF TREATMENT**

185.    The defendants also purported to treat a highly improbable number of patients for which Allstate was the payor on a single date of service.

186.    The defendants mailed and caused to be mailed bills to Allstate in which no less than fifteen (15) Allstate claimants/patients purportedly treated on the same date of service for 102 distinct days at issue in this Complaint.   *See Exhibit 2 identifying all of the Allstate claimants/patients who allegedly treated on each of these 102 dates of service.*

187.   For example, the defendants mailed and caused to be mailed bills to Allstate alleging that twenty-four (24) patients treated at Arianna Iannuccilli, D.C., Inc. on Friday, August 17, 2012.

188.   According to its posted hours of operation, Arianna Iannuccilli, D.C., Inc. was open for business for eight (8) hours on August 17, 2012.

189.   It is highly unlikely that twenty-four (24) patients for whom Allstate was the payor were seen at Arianna Iannuccilli, D.C., Inc. on the same date of service, especially considering that these twenty-four (24) patients do not represent all patients who treated on August 17, 2012 (including patients covered by an insurer other than Allstate and cash patients) but rather only those for whom bills were submitted to Allstate.

190.   On a different date of service, approximately 90 patients presented at Arianna Iannuccilli, D.C., Inc. during eight (8) hours of operation, which is an extremely high average treatment rate of eleven (11) patients per hour or less than six (6) minutes of treatment per patient.

191.   In addition to an improbably high number of patients allegedly treating on the same day, the defendants billed for alleged treatment that requires a minimum amount of time to be spent with each patient, such as examinations/office visits.

192.   By way of example, Allstate received bills through the U.S. Mail seeking payment for four (4) level-five patient examinations indicated by CPT Code 99215 and four (4) level-four patient examinations indicated by CPT Code 99204 that were purportedly rendered on November 21, 2012 to eight (8) separate patients.

193.   According to the AMA, CPT Code 99204 should be reported when (assuming other requirements are also met) the physician spends forty-five (45) minutes with the patient.

194.     The AMA also explains that CPT Code 99215 should be reported when (assuming other requirements are also met) the physician spends forty (40) minutes with the patient.

195.     In other words, the defendants claim that almost three (3) hours were spent providing level-four patient examinations and another almost three (3) hours providing level-five patient examinations to just Allstate claimants on November 21, 2012.

196.     In addition to examinations, Allstate received bills through the U.S. Mail indicating that eighteen (18) additional chiropractic services were purportedly provided to eleven (11) Allstate claimants, including the eight (8) patients who purportedly received patient examinations, on November 21, 2012.

197.     It is highly improbable that all of the billed-for treatment from November 21, 2012 was actually provided, especially when non-Allstate patients are considered.

198.     In fact, Allstate has confirmed that not only did an improbably high number of patients present to Arianna Iannuccilli, D.C., Inc. on several dates at issue in this Complaint, the time each patient actually spent with the defendants was significantly less than what the defendants billed for.

199.     Patients typically spent at most only between twenty (20) to thirty (30) minutes at Arianna Iannuccilli, D.C., Inc., including wait time where they were not being treated, but the defendants submitted bills falsely representing that far more than twenty (20) minutes of treatment was rendered.

200.     As discussed *supra*, the defendants billed Allstate at a volume of treatment that was not possible on some dates and extremely improbable on other dates given the number of patients allegedly treated and the type of treatment allegedly rendered, including some treatment that has a minimum time requirement.

31

201.    The defendants falsely submitted bills indicating that treatment was rendered when, in fact, Arianna Iannuccilli, D.C., Inc. was not open for the hours needed to perform said treatment.

202.    As discussed *supra*, the defendants billed Allstate for patient examinations that were never performed.  The improbably high volume of billing confirms the statements provided by patients at issue in this Complaint as the number of patient examinations performed is highly unlikely.

## VI.    FRAUDULENT UNNECESSARY AND EXCESSIVE TREATMENT

203.    As detailed above, the defendants fraudulently submitted bills to Allstate for treatment and services that were not actually rendered to patients at issue in this Complaint.

204.    In addition to billing Allstate for treatment that did not occur, Arianna Iannuccilli, D.C., Inc. also billed Allstate for unnecessary treatment related to the patients at issue in this Complaint.

205.    The defendants' main goal in treating patients was to perform as much treatment as early and often as possible, regardless of whether such treatment was reasonable and necessary to each individual patient, in order to inflate and bolster bills submitted to payors like Allstate.

206.    The treatment billed to Allstate by Arianna Iannuccilli, D.C., Inc. (by way of Iannuccilli, Capaldi, and Malek) was unnecessary for at least one or more of the following reasons: (1) patients presented to Arianna Iannuccilli, D.C., Inc. at the direction of Rhode Island personal injury attorneys and not due to medical need; (2) treatment was rendered pursuant to a predetermined protocol that necessarily failed to take into account each patient's unique symptoms and clinical needs; and (3) treatment was excessive as it related to the injury.

207.   None of these facts are evident within the four corners of the documents submitted to Allstate by the defendants and upon which Allstate relied in adjusting the claims and tendering payment to and for the benefit of the defendants.

208.   It was not until Allstate performed its comprehensive review of the defendants' submissions regarding patients at issue in this Complaint that a strikingly similar pattern across each patient file emerged.

209.   Each patient was assessed as having extremely similar reports of complaints, objective findings, and assessments regardless of the type of accident and regardless of each patient's age, sex, and pre-accident condition.

210.   Iannuccilli, Capaldi, and Malek each utilized a global template treatment plan that was not individualized but rather clearly cloned.

211.   For example, each patient was determined to be either "totally" or "partially" disabled according to the initial examination reports submitted to Allstate via U.S. Mail.

212.   The chiropractic treatment allegedly delivered to each patient was not linked to a goal-oriented treatment approach and there was no evidence of a plan for discharge from ongoing treatment for the vast majority of the patients at issue herein.

213.   The chiropractic care persisted without discharge for months, though there was no need for such extensive chiropractic treatment rendered and the standard of care for the duration of chiropractic treatment is far less.

214.   The inevitable result is that the formulaic chiropractic treatment rendered at Arianna Iannuccilli, D.C., Inc. was unnecessary and excessive.

215.   This pattern, which only became known upon Allstate's comprehensive review of all of the defendants' submissions across all patients, supports that the defendants engaged in a

scheme to defraud Allstate by billing for predetermined and excessive treatment based on false findings.

216.     These facts, coupled with the defendants' disregard for established standards of chiropractic care, reveal the unnecessary, excessive, unsubstantiated, and unjustified treatment that the defendants rendered, to the extent such treatment was rendered at all.

217.     The unnecessary treatment rendered by the defendants, discussed more fully below, includes, but is not limited to, the patients set out in the chart annexed hereto at Exhibit 1.

218.     Iannuccilli, Capaldi, and Malek engaged in unprofessional conduct every time they rendered "medically unnecessary services" through "any departure from, or the failure to conform to, the minimal standards of acceptable and prevailing medical practice in [their] area of expertise as is determined by the board."  R.I. Gen. Laws § 5-37-5.1(19).

219.     The defendants' fraudulent unnecessary and excessive treatment is confirmed by the following, each discussed in detail below: (1) patient solicitation; (2) unsupported exam findings; (3) improbable diagnoses; (4) *pro forma* disability ratings; (5) verbatim treatment plans; and (6) no-goal oriented treatment.

A.     PATIENT SOLICITATION

220.     "Soliciting professional patronage by agents or persons or profiting from acts of those representing themselves to be agents of the licensed [chiropractor]" is "unprofessional conduct" in the State of Rhode Island.  R.I. Gen. Laws § 5-37-5.1(11).

221.     The defendants relied on improper sources of referrals to generate patients.

222.     Notably, none of these referral sources was a licensed healthcare practitioner.

223.     Instead, the defendants relied on personal injury attorneys to direct patients to them who did not actually need chiropractic treatment.

224.     Upon information and belief, Iannuccilli has confirmed that she does in fact pay attorneys money in exchange for referrals in several recordings available at:

    a.    https://www.youtube.com/watch?v=Rtl-472dmkM

    b.    https://www.youtube.com/watch?v=aLQh-YObLns

    c.    https://www.youtube.com/watch?v=5jjQlqaRtNQ

    d.    https://www.youtube.com/watch?v=ct6E9NNOLv4

(Each video last accessed on January 28, 2017).

225.     Upon information and belief, Iannuccilli pays kickbacks to Rhode Island personal injury attorneys in exchange for patient referrals.

226.     According to statements given to Allstate by several patients at issue in this Complaint, personal injury attorneys directed the client/patient to receive treatment at Arianna Iannuccilli, D.C., Inc.

227.     According to the State of Rhode Island, a Chiropractor engages in unprofessional conduct any time he/she "[d]ivid[es fees or agree[s] to split or divide the fees received for professional services for any person for bringing to or referring a patient."  R.I. Gen. Laws §5-37-5.1(12).

228.     The solicitation done on behalf and for the benefit of the defendants did not take into consideration whether the accident victim actually needed medical attention, and in fact many patients did not require medical attention and would not have sought medical treatment but for the defendants' solicitation.

229.     Allstate is not required to compensate the defendants for unnecessary treatment rendered to patients at issue in this Complaint (identified in Exhibit 1) resulting from the

unlawful solicitation of patients and it is entitled to the return of money paid in reliance on the defendants' fraud.

**B.** **PREDETERMINED TREATMENT PROTOCOL AND FINDINGS**

230.    The defendants consistently billed Allstate for treatment that was not medically necessary based on the patients' actual clinical symptoms and/or that was not performed in accordance with established standards of care.

231.    As it relates to chiropractors licensed in the State of Rhode Island, the "rendering of medically unnecessary services, and any departure from, or the failure to conform to, the minimal standards of acceptable and prevailing medical practice in his or her area of expertise" is proof of unprofessional conduct in the State of Rhode Island.  R.I. Gen. Laws § 5-37-5.1(19)

232.    As an initial matter, almost every patient at issue in this Complaint was involved in a minor motor vehicle accident, usually of the "fender-bender" variety, and presented to Arianna Iannuccilli, D.C., Inc. with soft-tissue injuries.

233.    By their nature, soft-tissue injuries are self-limiting and usually require minimal intervention to resolve the patient to pre-accident status.

234.    Soft-tissue injuries may heal within a few weeks of the injury without medical intervention, medication, or passive modalities such as hot and/or cold packs, mechanical traction, electrical stimulation, or chiropractic manipulation treatment.

235.    In general, passive modalities are only beneficial in the acute phase of the injury.

236.    Despite the fact that almost all of the patients at issue in this Complaint presented with soft-tissue injuries, the defendants purportedly rendered treatment for months on end to almost every patient.

237.    The medical documentation submitted to Allstate by the defendants created the appearance that treatment was medically necessary, thereby justifying the continued treatment.

238.    However, the medical records submitted to Allstate were created by the defendants to falsely substantiate the medical necessity of the treatment billed to Allstate.

239.    The State of Rhode Island maintains that Chiropractors engage in "unprofessional conduct" each time he/she "willfully mak[es] and fil[es] false reports or records," "[m]ak[es] willful misrepresentations in treatments," "[f]ail[s] to maintain … standards related to proper utilization of services … and/or quality of care."  R.I. Gen. Laws § 5-37-5.1 (made applicable to chiropractors through R.I. Gen. Laws § 5-30-17).

240.    The full extent of the defendants' misrepresentations regarding the necessity of the treatment they allegedly provided was not known to Allstate until it undertook a full investigation of the defendants culminating in the within Complaint.

241.    Allstate's investigation revealed a strikingly similar pattern of alleged diagnoses and treatment across all patients, including the discovery of a pattern by the defendants in (1) recording unsupported examination findings; (2) routinely recording substantially similar diagnoses regardless of the patient's reported injuries; (3) providing mirrored treatment plans further indicating that patients were exposed to a predetermined treatment protocol; and (4) failing to indicate short and/or long term goals for patients.

242.    Each patient was assessed as having extremely similar reports of complaints, objective findings, and assessments regardless of the type of accident and regardless of each patient's age, sex, and pre-accident condition.

243.    Almost every patient at issue in this Complaint was determined to be either totally or partially disabled as the result of the motor vehicle accident by Iannuccilli, Capaldi, or Malek

during the purportedly-performed initial examination.

244.    As discussed below, Iannuccilli, Capaldi, and Malek followed a template treatment plan for each patient that was non-goal oriented and offered no clinical direction, no short-term or long-term goals, and no patient-specific recommendations for treatment.

245.    These facts, coupled with the defendants' disregard for established standards of medical care, reveal the unnecessary, excessive, unsubstantiated, and unjustified treatment that the defendants rendered, to the extent such treatment was rendered at all.

### 1.    <u>Unsupported Exam Findings</u>

246.    The standard of care for the chiropractic profession requires obtaining patient demographic data, chief complaints, the history of the present illness, a past health history, a current health status, and a review of symptoms in order to recognize changes in patient presentation during the course of care and perform evaluation and treatment on an interactive, visit-to-visit basis.

247.    The standard of care for the chiropractic profession also requires a physical examination to recognize normal, variant, and abnormal findings, and interpret and assess the clinical importance of significant physical examination findings.

248.    Iannuccilli, Capaldi, and Malek conspired and agreed to create (and did, in fact, create) medical documentation that falsely described the patient's subjective condition (i.e., the patient's own description of his or her symptoms) and the patient's objective condition (i.e., the treating provider's objective findings of the patient's condition based upon an examination, range of motion test, or other objective criteria) to provide a basis for reimbursement and falsely justify the continuation of patient treatment.

249.    Iannuccilli, Capaldi, and Malek assessed patients as having extremely similar reports of complaints, objective findings, and other assessments regardless of the type of accident that the patient was involved in, or the age, sex, or pre-incident clinical condition of the patient.

250.    Range of motion ("ROM") testing is a common component of a routine initial patient physical examination and is used to establish a baseline before treatment begins.

251.    Iannuccilli, Capaldi, and Malek each regularly reported "restricted" ROM findings for the patients at issue in this Complaint without any further descriptions.

252.    Iannuccilli, Capaldi, and Malek each also routinely reported their patients as "positive" for a variety of orthopedic tests.

253.    The lack of specificity relating to patients at issue in this Complaint is evidenced by the fact that the overwhelming majority of the initial examinations fail to document any numeric results relating to examination findings such as ROM.

254.    It is highly unlikely and medically improbable that almost all of the defendants' patients would present with such similar symptoms and generate nearly identical initial findings, especially as most of the patients at issue herein were involved in low-level motor vehicle accidents.

### a.      Range of Motion Restriction

255.    When performed properly, ROM testing is used to assess baseline levels (1) to determine the extent of clinical involvement and (2) to gauge improvement over the course of treatment.

256.    Iannuccilli, Capaldi, and Malek each reported ROM findings as "restricted" relating to almost every patient at issue in this Complaint.

257.    Accurately documenting the ROM testing results for each patient is important as it allows a healthcare provider to determine the percentage of improvement, which is then used to conclude whether the current treatment plan is effectively treating the injury.

258.    Without properly reporting ROM findings in each patient at issue in this Complaint, Iannuccilli, Capaldi, and Malek were each unable to accurately gauge each patient's improvement of the course of treatment.

259.    Furthermore, Iannuccilli, Capaldi, and Malek assessed almost every patient at issue in this Complaint as having a ROM restriction in at least one spinal region even though in many instances such findings are in direct conflict with medical records of other healthcare providers during the same period.

260.    For example, Iannuccilli reported patient M.P. (Claim No. 0360156194) as having ROM restriction in her cervical spine and right shoulder on March 9, 2015.

261.    However, according to the medical records submitted by Kent Hospital detailing the evaluation of M.P. performed on March 3, 2015 (only six days earlier), M.P. had no ROM restrictions due to pain in her cervical spine.

262.    Iannuccilli, Capaldi, and Malek furthered the defendants' overall scheme to defraud Allstate by assessing almost every patient at issue in this Complaint as having ROM restrictions in at least one spinal region for the sole purpose of justifying the medically unnecessary treatment the patients received at Arianna Iannuccilli, D.C., Inc.

**b.      Routine Findings of Positive Orthopedic Tests**

263.    The standard of care in the medical field dictates that if an orthopedic test is "positive," the healthcare professional must appropriately document the findings of the test.

264.    However, with respect to nearly every patient at issue in this Complaint, Iannuccilli, Capaldi, and Malek each simply reported "positive" or "positive bilaterally" without documenting any specifics regarding how or why the orthopedic test results were abnormal.

265.    These allegedly "positive" findings were used to justify months of treatment.

266.    It is not clinically possible that so many patients would present with the bilateral findings reported by the defendants.

267.    To regard these findings as a true and accurate representation of the patients' purported conditions, one would have to accept the illogical proposition that each patient (1) struck the same exact parts of the motor vehicle (center, back, and front) (2) with both arms and legs in the same position, (3) while looking straight ahead.

268.    The multitude of improbable positive orthopedic tests that were reported for each patient (especially considering that most were not supported within reasonable medical certainty) is more consistent with creating or exaggerating a claim rather than a patient-centered assessment of each patient's true clinical condition.

269.    Iannuccilli, Capaldi, and Malek each made gross misrepresentations when reporting examination and orthopedic test findings relating to patients at issue in this Complaint.

270.    Therefore, the examination and orthopedic test findings reported by Iannuccilli, Capaldi, and Malek were manufactured to exaggerate the patients' purported injuries for the specific purpose of justifying the provision of unnecessary services based on the predetermined treatment protocol devised and implemented by Iannuccilli, Capaldi, and Malek.

**2.**   **Improbable Diagnoses**

271.   When a person has been involved in a motor vehicle accident, a licensed healthcare provider must obtain a proper medical history of the patient and perform an examination to determine a proper diagnosis.

272.   Based on a valid diagnosis, a licensed healthcare provider determines and designs a proper treatment plan according to that patient's unique medical needs, which considers, among other things, the nature and extent of the patient's injuries.

273.   In order to falsely justify the unnecessary chiropractic treatment rendered at Arianna Iannuccilli, D.C., Inc., Iannuccilli, Capaldi, and Malek each fabricated patient diagnoses during the patient's purported initial examination.

274.   The purported initial examination inevitably results in a long list of predetermined findings and diagnoses such as a sprain/strain in a patient's spinal region.

275.   Iannuccilli, Capaldi, and Malek diagnosed almost all of the patients at issue in this Complaint with a sprain/strain in at least two spinal regions during each patient's purported initial examination.

276.   Iannuccilli, Capaldi, and Malek then initiated the predetermined treatment plan of chiropractic manipulation, electrotherapy, ultrasound, hot and cold packs, traction, and other passive modalities three times a week for four weeks for almost every patient.

277.   It is highly unlikely that almost all of the patients at issue in this Compliant would receive the same diagnosis of sprain/strain in at least two spinal regions as the result of a motor vehicle accident.

**3.**   ***Pro Forma* Disability Ratings**

278.   As part of their scheme to defraud, Iannuccilli, Capaldi, and Malek each routinely

42

assigned false permanent disability ratings to exaggerate the patients' injuries to establish a basis for reimbursement of insurance proceeds.

279.    A permanent disability rating is assigned when there is no expected change in a patient's condition over the course of one (1) year (i.e., the patient has reached maximum medical improvement).

280.    The impairment does not indicate a disability of job performance, but rather is a functional assessment of a person's ability to perform the normal activities of daily living ("ADL") (e.g., self-care, daily physical activity, sensory/feelings, sleep, and sexual functions).

281.    Reporting an impairment of injury represents that the person's condition cannot be resolved, and will affect the patient's ADL from that point forward.

282.    Iannuccilli, Capaldi, and Malek each assessed almost every patient at issue in this Complaint with a "totally" or "partial" disability rating during the purportedly-performed initial examinations.

283.    Approximately half of the patients at issue in this Complaint were initially determined to be "totally disabled" by Iannuccilli, Capaldi, and Malek with the other half receiving a "partially disabled" rating.

284.    In other words, even though almost every patient at issue in this Complaint was involved in a low-impact motor vehicle accident, almost half of these patients were determined to be "totally disabled," meaning Iannuccilli, Capaldi, and Malek each believed the patients would not improve for at least a year.

285.    However, Iannuccilli, Capaldi, and Malek each issued predetermined disability ratings to patients at issue in this Complaint without performing the necessary examination and establishing the appropriate findings to document each patient's ADL during the alleged

43

evaluations.

286.    Moreover, patients' disability ratings were fabricated whereas Iannuccilli, Capaldi, and Malek each routinely overstated the causal nexus between the motor vehicle accident and the alleged disability rating to create the appearance that the patient's injuries were directly related to the present accident (to obtain coverage for the accident under an Allstate insurance policy), and the patient's injuries were more severe than actually sustained (to obtain a larger payment/settlement than would otherwise be paid by Allstate).

287.    For example, patient K.P. (Claim No. 0162015523) received a partial disability rating during her initial examination with Iannuccilli on March 8, 2011.

288.    However, K.P. provided testimony to Allstate that refutes the partial disability rating by Iannuccilli:

> Q:      In your daily life, what were you doing, you were going to work every day?
>
> A:      Yup, uh-huh.
>
> Q:      Were you doing everything else at home that you would normally do?
>
> A:      I had to put the heat pad on my –
>
> Q:      Okay, but were you doing everything else that you normally did –
>
> A:      Yes.
>
> Q:      -- at home?
>
> A:      Yes.
>
> Q:      So the only thing different was that you were putting heat on your shoulder?
>
> A:      Yup, uh-huh.

289.     In other words, there was no reason for Iannuccilli to render K.P. partially disabled as the result of the motor vehicle accident that occurred on February 26, 2010.

290.     The assignment of an impairment rating creates the perception of extensive injury, and increases the value of the claim demanded from the insurer.

291.     Iannuccilli, Capaldi, and Malek included these false disability ratings in patients' medical records—which were mailed to Allstate by the defendants either directly or by the personal injury attorneys with whom the defendants closely worked as part of settlement demand packages—to increase the value of each patient's claim and collect more money from Allstate.

292.     Allstate made payment decisions in reasonable reliance on the disability ratings issued by Iannuccilli, Capaldi, and Malek.

### 4.     Verbatim Treatment Plans

293.     The standard of care in the medical field requires a review of symptoms in order to recognize changes in patient presentation during the course of care and to perform evaluations and treatment on an interactive, visit-to-visit basis.

294.     The medical documentation submitted to Allstate by the defendants created the appearance that treatment was medically necessary, thereby justifying the continued treatment.

295.     Iannuccilli, Capaldi, and Malek submitted/knowingly had submitted initial examination reports to Allstate through the U.S. Mail that almost always concluded that the patient had soft-tissue injuries that necessitated a treatment plan that included the provision of numerous treatments and tests at Arianna Iannuccilli, D.C., Inc.

296.     However, the medical records submitted to Allstate falsely substantiated the medical necessity of the treatment based on the defendants' predetermined protocol.

297.    Based upon the findings from the falsified initial examination of each patient, Iannuccilli, Capaldi, and Malek uniformly performed a set protocol of treatment regardless of each patient's individual needs.

298.    Iannuccilli, Capaldi, and Malek each utilized the following treatment plan for almost every patient at issue in this Complaint:

> The patient's treatment will consist of spinal manipulation to restore appropriate joint mobility and a combination of electrotherapy, ultrasound, ice and heat, traction, and other modalities when indicated.  In conjunction with the office-based therapies, home therapies including the restriction of activities, instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises will be given to the patient.  The patient will be seen three times a week for four weeks, at which time [he or she] will be reevaluated.

299.    This template treatment plan reflects a mirrored and non-goal oriented treatment plan that offers no clinical direction, no short-term or long-term goals, and no patient-specific recommendations for treatment.

300.    Not only was there little variance across patients, each patient's treatment plan rarely changed over the course of that patient's entire treatment at Arianna Iannuccilli, D.C., Inc.

301.    Iannuccilli, Capaldi, and Malek used substantially similar treatment modalities for almost every patient at issue in this Complaint.

302.    In the case of nearly every patient, Arianna Iannuccilli, D.C., Inc. billed Allstate for services purportedly rendered to patients consisting of: (1) CPT Code 97010 – hot/cold packs; (2) CPT Code 97012 – mechanical traction; (3) CPT Code 97014 – electrical stimulation (unattended); (4) CPT Code 97026 – infrared; (5) CPT Code 97035 – ultrasound; (6) CPT Code 97110 – therapeutic exercise; and (7) CPT Codes 98940 and/or 98941 – spinal adjustments.

303.    This treatment protocol was not linked to a goal-oriented treatment approach.

304.     The treatment rendered at Arianna Iannuccilli, D.C., Inc., if at all, rarely varied from patient to patient, evidencing that treatment was rendered pursuant to a predetermined protocol that was not individualized to each patient's clinical symptoms and needs.

305.     "Incompetent, negligent, or willful misconduct in the practice of medicine which includes the rendering of medically unnecessary services, and any departure from, or the failure to conform to, the minimal standards of acceptable and prevailing medical practice in his or her area of expertise" is proof of unprofessional conduct in the State of Rhode Island.  R.I. Gen. Laws § 5-37-5.1(19).

306.     Furthermore, the treatment purportedly rendered is inconsistent with the defendants' own recommendations.

307.     For example, the medical records authored by Iannuccilli, Capaldi, and Malek each reflect a sporadic use of the recommended modalities, such as traction and heat, and rarely documented the use of ultrasound and ice even though these modalities are each listed in the patients' treatment plans.

308.     Iannuccilli, Capaldi, and Malek offer no clinical rationale for the inconsistencies noted above.

309.     Put simply, Iannuccilli, Capaldi, and Malek merely listed the modalities available in the office at the onset of treatment without providing a clinical rationale or medically necessary reason for prescribing such treatment.

310.     Furthermore, the defendants failed to accurately record each patient's response to the services rendered while also failing to update the prescribed treatment plan in response to the treatment rendered.

311.   Instead, Iannuccilli, Capaldi, and Malek each routinely reported that "[t]he patient's condition persists" and that the patient will "[c]ontinue with current treatment plan" even when the treatment plan was not beneficial to the patient.

### 5.   No Goal-Oriented Treatment Plan

312.   Iannuccilli, Capaldi, and Malek each failed to identify and execute a goal-oriented treatment plan for patients at issue in this Complaint.

313.   The chiropractic treatment that was delivered to Arianna Iannuccilli, D.C., Inc. patients was not linked to a goal-oriented treatment approach and there was no evidence of a plan for discharge from ongoing treatment for the vast majority of the patients at issue in this Complaint.

314.   The pattern review of patient files at issue in this Complaint uncovered gross insufficiencies and inconsistencies in the health records in that the records fail to document any predictable outcome to support the medical necessity of the treatment in the absence of short-term and long-term goals as expected in the minimum standard of care for chiropractors in the State of Rhode Island.

315.   Furthermore, Iannuccilli, Capaldi, and Malek failed to accurately record each patient's response to the services rendered while also failing to update the prescribed treatment plan in response to the treatment rendered.

316.   Instead, Iannuccilli, Capaldi, and Malek each routinely reported that "patient's condition persists" and that "she/he tolerated treatment well today."

317.   The fact that Iannuccilli, Capaldi, and Malek systematically specified that each patient's condition persisted up until the date the patient no longer treated at Arianna Iannuccilli, D.C., Inc. indicates that no clear goal-oriented treatment program was devised for each patient.

318.    Moreover, Iannuccilli, Capaldi, and Malek each routinely failed to support the individualized and medically necessary use of the reported home exercise programs recommended for each patient.

319.    Home exercise programs are essential in treating patients with soft-tissue injuries to allow patients to return to their pre-motor vehicle accident condition.

320.    However, although providing home exercise programs to patients at issue in this Complaint was part of the predetermined treatment plan, Iannuccilli, Capaldi, and Malek each consistently failed to document each patient's medical records with any evidence of specific home exercise instructions during the course of treatment.

321.    Iannuccilli, Capaldi, and Malek each also repeatedly failed to document each patient's progress relating to the home exercise program and never altered a patient's treatment plan.

322.    The failure of Iannuccilli, Capaldi, and Malek to document the progress or alteration of a single patient's home exercise program confirms that every reference to a patient's home exercise program was nothing more than predetermined and *pro forma* language that was inserted in medical files for the sole purpose of inflating the potential value of the claim submitted to Allstate for payment.

C.    EXEMPLAR CLAIMS

323.    The following exemplar patients are representative of all of the patients at issue in this Complaint who received excessive, unnecessary, and contraindicated treatment from the defendants, if such treatment was rendered at all.

1. **Patient A.A.   (Claim No. 0334328796)**

324.    Patient A.A. presented at Arianna Iannuccilli, D.C., Inc. on or about March 25, 2014 following his alleged involvement in a motor vehicle accident on March 19, 2014.

325.    A.A. stated to Allstate that he was referred to Arianna Iannuccilli, D.C., Inc. by his Rhode Island personal injury attorney.

326.    A.A. also stated that the secretary at Arianna Iannuccilli, D.C., Inc. helped him fill out his forms and that he did not receive any comprehensive exams while treating with the defendants.

327.    During A.A.'s March 25, 2014 initial evaluation, Iannuccilli reported A.A.'s cervical and thoracic spine revealed range of motion to be restricted in rotation, extension, and lateral flexion, while shoulder ranges of motion were essentially full.

328.    As with almost every patient at issue in this Complaint, Iannuccilli reported range of motion restriction without documenting any specifics regarding how or why A.A.'s range of motion was restricted.

329.    Iannuccilli also assessed A.A. with cervical sprain/strain and thoracic sprain/strain.

330.    Iannuccilli further assessed A.A. with bilateral shoulder sprain/strain, despite the fact Iannuccilli reported essentially full range of motion in A.A.'s shoulders.

331.    A.A. was also determined to be totally disabled for approximately four (4) weeks even though Iannuccilli failed to document his ADL other than notating generally that "[A.A.] describes his pain as stiff and burning and interferes with his sleep and daily routine."

332.    Iannuccilli used these findings during A.A.'s purported initial evaluation to falsely justify the subsequent predetermined treatment protocol plan of:

> The patient's treatment will consist of spinal manipulation to restore appropriate joint mobility and a combination of electrotherapy, ultrasound, ice and heat, traction, and other modalities when indicated. In conjunction with the office-based therapies, home therapies including the restriction of activities, instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises will be given to the patient. The patient will be seen three times a week for four weeks, at which time he will be reevaluated.

333.    However, Iannuccilli did not follow her own treatment plan as A.A. never received traction or ultrasound treatment, thereby confirming that Iannuccilli's treatment plan was predetermined and merely inserted into each patient's initial examination as a *pro forma* matter.

334.    On April 8, 2014, Iannuccilli reported that A.A. was "progressing as expected"; on April 9, 2014, Iannuccilli reported that A.A. "is making acceptable progress toward resolution of the chief complaint"; but on April 10, 2014, Malek reported that A.A.'s "condition persists" without any explanation as to why A.A. was not making "progress" as reported by Iannuccilli.

335.    On April 15, 2014, Iannuccilli reported that A.A.'s "condition persists," again without any explanation for the discrepancy from her findings the previous week.

336.    A.A.'s medical records are devoid of a single reference to the "instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises" that Iannuccilli listed in her predetermined treatment plan.

337.    In fact, A.A.'s diagnosis, prognosis, and treatment plan did not change during the course of his purported treatment at Arianna Iannuccilli, D.C., Inc. other than three separate instances in which A.A. purportedly received CMT to additional regions of the spine, evidenced by Arianna Iannuccilli, D.C., Inc.'s charges to Allstate for CPT Code 98941 on March 26, 2014; April 2, 2014; and June 24, 2014.

338. However, the defendants failed to address in A.A.'s medical records why it was medically necessary to perform CMT to 3-4 regions of A.A.'s spine on March 26, 2014; April 2, 2014; and June 24, 2014 when A.A. only complained of pain in two regions (the cervical and thoracic spine).

339. Thus, the defendants failed to establish the medical necessity of treatment rendered, if treatment was rendered at all, and further failed to indicate how the treatment was designed to affect A.A.'s specific patient care.

340. Arianna Iannuccilli, D.C., Inc. submitted charges for the treatment purportedly rendered to A.A. as follows: (1) CPT Code 97010 – hot/cold packs; (2) CPT Code 97014 – electrical stimulation (unattended); (3) CPT Code 98940 – spinal CMT 1-2 regions; and (4) CPT Code 98941 – spinal adjustment 3-4 regions from March 26, 2014 until on or about July 3, 2014.

341. Arianna Iannuccilli, D.C., Inc. submitted claims for payment and medical records relative to the treatment purportedly rendered to A.A. through the U.S. Mail.

342. Arianna Iannuccilli, D.C., Inc., Iannuccilli, and Malek were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to A.A. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mail.

343. However, the treatment purportedly rendered by the defendants is considered "unprofessional conduct" as the defendants: 1) participated in the unlawful solicitation of A.A.; 2) fabricated medical records to falsely claim comprehensive patient examinations were performed on A.A.; and 3) fabricated medical records to falsely claim treatment was provided within the "minimal standards of acceptable and prevailing medical practice." *See* R.I. Gen. Laws § 5-37-5.1.

344.    Instead, the defendants purported to treat A.A. as part of their overall scheme to defraud Allstate by billing for undelivered, unnecessary, inappropriate, and worthless treatment for the express purpose of inflating the value of A.A.'s claim for medical expenses.

345.    Allstate relied upon submissions generated by the defendants and knowingly mailed on their behalf to Allstate in adjusting A.A.'s claim and tendering payment.

346.    Because the treatment was merely the product of the defendants' scheme to defraud, the defendants are not entitled to retain any of the proceeds they collected from Allstate relative to A.A.

## 2.    Patient Y.A.   (Claim No. 0279107452)

347.    Patient Y.A. presented at Arianna Iannuccilli, D.C., Inc. on or about February 25, 2013 following her alleged involvement in a motor vehicle accident on February 15, 2013.

348.    Y.A. stated to Allstate that she was referred to Arianna Iannuccilli, D.C., Inc. by her Rhode Island personal injury attorney.

349.    Y.A. also stated that her attorney called Arianna Iannuccilli, D.C., Inc. and made the appointment for her over the telephone.

350.    During Y.A.'s February 25, 2013 initial evaluation, Iannuccilli reported Y.A.'s cervical spine revealed ranges of motion to be restricted in rotation, extension, and lateral flexion; thoracolumbar ranges of motion were restricted in flexion and right lateral flexion; and positive orthopedic results based on shoulder depression and Yeoman testing.

351.    As with almost every patient at issue in this Complaint, Iannuccilli reported range of motion restriction without documenting any specifics regarding how or why the patient's range of motion was restricted.

352.     Iannuccilli also assessed Y.A. with cervical sprain/strain, thoracic sprain/strain, lumbosacral sprain/strain, and cephalgia.

353.     Y.A. was also determined to be partially disabled for approximately four (4) weeks even though Iannuccilli failed to document her ADL other than notating generally that "[Y.A.] states [her pain] is constant and interferes with her sleep and daily routine."

354.     Iannuccilli used these findings during Y.A.'s purported initial evaluation to falsely justify the subsequent predetermined treatment protocol plan of:

> The patient's treatment will consist of spinal manipulation to restore appropriate joint mobility and a combination of electrotherapy, ultrasound, ice & heat, traction, and other modalities when indicated.  In conjunction with the office-based therapies, home therapies including the restriction of activities, instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises will be given to the patient.  The patient will be seen three times a week for four weeks, at which time she will be reevaluated.

355.     However, Iannuccilli did not follow her own treatment plan as Y.A. never received ultrasound treatment and only one session of mechanical traction, thereby confirming that Iannuccilli's treatment plan was predetermined and merely inserted into each patient's initial examination as a *pro forma* matter.

356.     The defendants failed to properly record Y.A.'s response to the treatment purportedly rendered, instead routinely stating that "[Y.A.]'s condition persists" up until the last treatment date.

357.     Y.A.'s medical record is also devoid of a single reference to the "instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises" that Iannuccilli listed in her predetermined treatment plan.

358.     In fact, Y.A.'s diagnosis, prognosis, and treatment plan did not change during the course of her purported treatment at Arianna Iannuccilli, D.C., Inc.

359.     Thus, the defendants failed to establish the medical necessity of treatment rendered, if treatment was rendered at all, and further failed to indicate how the treatment was designed to affect Y.A.'s specific patient care.

360.     Arianna Iannuccilli, D.C., Inc. billed Allstate for treatment purportedly rendered to Y.A. as follows: (1) CPT Code 97010 – hot/cold packs; (2) one instance of CPT Code 97012 – mechanical traction; (3) CPT Code 97014 – electrical stimulation (unattended); and (4) CPT Code 98941 – spinal adjustment 3-4 regions from February 27, 2013 until on or about March 18, 2013.

361.     Arianna Iannuccilli, D.C., Inc. submitted claims for payment and medical records relative to the treatment purportedly rendered to Y.A. directly to Allstate through the U.S. Mail.

362.     However, the treatment purportedly rendered by Iannuccilli is "unprofessional conduct" as this defendant: 1) participated in the unlawful solicitation of Y.A.; 2) fabricated medical records to falsely claim comprehensive patient examinations were performed on Y.A.; and 3) fabricated medical records to falsely claim treatment was provided within the "minimal standards of acceptable and prevailing medical practice."  *See* R.I. Gen. Laws § 5-37-5.1.

363.     Allstate relied upon the defendants' submissions in adjusting Y.A.'s claim and tendering payment to Arianna Iannuccilli, D.C., Inc.

### 3.     Patient N.G.   (Claim No. 0279107452)

364.     Patient N.G. presented at Arianna Iannuccilli, D.C., Inc. on or about February 25, 2013 following her alleged involvement in a motor vehicle accident on February 15, 2013.

365. N.G. stated to Allstate that she was referred to Arianna Iannuccilli, D.C., Inc. by her Rhode Island personal injury attorney.

366. During N.G.'s February 25, 2013 initial evaluation, Iannuccilli reported N.G.'s cervical spine revealed ranges of motion to be restricted in rotation and extension; thoracolumbar ranges of motion were restricted in flexion and extension; left knee ranges of motion were restricted in flexion and extension; and positive orthopedic results based on shoulder depression, Soto-Hall, and Kemp's testing.

367. As with almost every patient at issue in this Complaint, Iannuccilli reported range of motion restriction without documenting any specifics regarding how or why the patient's range of motion was restricted.

368. Iannuccilli also assessed N.G. with cervical sprain/strain, lumbar sprain/strain, and left knee sprain/strain.

369. N.G. was also determined to be totally disabled for approximately four (4) weeks even though Iannuccilli failed to document her ADL other than notating generally that "[N.G.] states the pain interferes with her sleep and daily routine."

370. Iannuccilli used these findings during N.G.'s purported initial evaluation to falsely justify the subsequent predetermined treatment protocol plan of:

> The patient's treatment will consist of spinal manipulation to restore appropriate joint mobility and a combination of electrotherapy, ultrasound, ice & heat, traction, and other modalities when indicated. In conjunction with the office-based therapies, home therapies including the restriction of activities, instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises will be given to the patient. The patient will be seen three times a week for four weeks, at which time she will be reevaluated.

371.     However, Iannuccilli did not follow her own treatment plan as N.G. never received ultrasound treatment, thereby confirming that Iannuccilli's treatment plan was predetermined and merely inserted into each patient's initial examination as a *pro forma* matter.

372.     The defendants failed to properly record N.G.'s response to the treatment purportedly rendered, instead routinely stating that "[N.G.]'s condition persists," including the June 21, 2013 date of service when N.G. was discharged from Arianna Iannuccilli, D.C., Inc.

373.     N.G.'s medical record is also devoid of a single reference to the "instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises" that Iannuccilli listed in her predetermined treatment plan.

374.     In fact, N.G.'s diagnosis, prognosis, and treatment plan did not change during the course of her purported treatment at Arianna Iannuccilli, D.C., Inc.

375.     Thus, the defendants failed to establish the medical necessity of treatment rendered, if treatment was rendered at all, and further failed to indicate how the treatment was designed to affect N.G.'s specific patient care.

376.     Arianna Iannuccilli, D.C., Inc. billed Allstate for treatment purportedly rendered to N.G. as follows: (1) CPT Code 97010 – hot/cold packs; (2) CPT Code 97012 – mechanical traction; (3) CPT Code 97014 – electrical stimulation (unattended); and (4) CPT Code 98941 – spinal adjustment 3-4 regions from February 27, 2013 until on or about June 21, 2013.

377.     Arianna Iannuccilli, D.C., Inc. submitted claims for payment and medical records relative to the treatment purportedly rendered to N.G. directly to Allstate through the U.S. Mail.

378.     Arianna Iannuccilli, D.C., Inc.'s bill was also submitted to N.G.'s personal injury attorney, who in turn used the U.S. Mail to submit that bill to Allstate demanding payment for

the treatment purportedly rendered by Arianna Iannuccilli, D.C., Inc. as part of a settlement demand.

379.    Arianna Iannuccilli, D.C., Inc. and Iannuccilli were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to N.G. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mail.

380.    In reliance on the statements made and medical records contained in the settlement demand letter submitted on N.G.'s behalf, and on the services purportedly rendered to N.G. by the defendants, Allstate tendered a settlement payment on behalf of N.G. in the amount of $13,259.00, of which $2,068.00 was attributable to the defendants' treatment of N.G.

381.    Because the treatment was merely the product of the defendants' scheme to defraud, the defendants are not entitled to retain any of the proceeds they collected from Allstate's settlement of N.G.'s claim.

### 4.    Patient O.W.  (Claim No. 0163177090)

382.    Patient O.W. presented at Arianna Iannuccilli, D.C., Inc. on or about March 17, 2010 following his alleged involvement in a motor vehicle accident on March 12, 2010.

383.    O.W. stated to Allstate that he was referred to Arianna Iannuccilli, D.C., Inc. by his Rhode Island personal injury attorney.

384.    During O.W.'s March 17, 2010 initial evaluation, Iannuccilli reported O.W.'s lumbar spine revealed range of motion to be restricted in all planes and left shoulder ranges of motion are restricted in external rotation, abduction, and extension.

385.    As with almost every patient at issue in this Complaint, Iannuccilli reported range of motion restriction without documenting any specifics regarding how or why O.W.'s range of motion was restricted.

386.    Iannuccilli also assessed O.W. with lumbar sprain/strain, thoracic sprain/strain, and left shoulder sprain/strain.

387.    O.W. was also determined to be totally disabled for approximately four (4) to six (6) weeks, although Iannuccilli failed to document his ADL other than notating generally that "[the pain] interferes with his daily routine."

388.    Iannuccilli used these findings during O.W.'s purported initial evaluation to falsely justify the subsequent predetermined treatment protocol plan of:

> The patient's treatment will consist of spinal manipulation to restore appropriate joint mobility and a combination of electrotherapy, ultrasound, ice & heat, traction, and other modalities when indicated.  In conjunction with the office-based therapies, home therapies including the restriction of activities, instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises will be given to the patient.  The patient will be seen three times a week for four weeks, at which time he will be reevaluated.

389.    However, Iannuccilli did not follow her own treatment plan as O.W. never received traction or ultrasound treatment, thereby confirming that Iannuccilli's treatment plan was predetermined and merely inserted into each patient's initial examination as a *pro forma* matter.

390.    The defendants failed to properly record O.W.'s response to the treatment purportedly rendered, instead routinely stating that "[O.W.]'s condition persists."

391.    O.W.'s medical records are also devoid of a single reference to the "instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises" that Iannuccilli listed in her predetermined treatment plan.

392.    In fact, O.W.'s diagnosis, prognosis, and treatment plan did not change during the course of his purported treatment at Arianna Iannuccilli, D.C., Inc.

393.    Thus, the defendants failed to establish the medical necessity of treatment rendered, if treatment was rendered at all, and further failed to indicate how the treatment was designed to affect O.W.'s specific patient care.

394.    O.W. was discharged from Arianna Iannuccilli, D.C., Inc. on May 10, 2010 after Iannuccilli determined "[O.W.]'s condition persists" on May 3, 2010 and then finding that O.W. was "progressing as expected" on his very next office visit on May 7, 2010.

395.    Arianna Iannuccilli, D.C., Inc. submitted charges for the treatment purportedly rendered to O.W. as follows: (1) CPT Code 97010 – hot/cold packs; (2) CPT Code 97014 – electrical stimulation (unattended); (3) CPT Code 98940 – spinal CMT 1-2 regions; and (4) CPT Code 98941 – spinal adjustment 3-4 regions March 19, 2010 until on or about May 7, 2010.

396.    Arianna Iannuccilli, D.C., Inc.'s bill was submitted to O.W.'s personal injury attorney, who in turn used the U.S. Mail to submit that bill to Allstate demanding payment for the treatment purportedly rendered by Arianna Iannuccilli, D.C., Inc. as part of a settlement demand.

397.    Arianna Iannuccilli, D.C., Inc. and Iannuccilli were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to O.W. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mail.

398.    In reliance on the statements made and medical records contained in the settlement demand submitted on O.W.'s behalf, and on the treatment purportedly rendered to O.W. by the defendants, Allstate tendered a settlement payment on behalf of O.W. in the amount of $19,500.00, of which $3,817.00 was attributable to the defendants' treatment of O.W.

### 5.    Patient R.R.   (Claim No. 0357475797)

399.    Patient R.R. presented at Arianna Iannuccilli, D.C., Inc. on or about January 26, 2015 following his alleged involvement in a motor vehicle accident on January 23, 2015.

400.    During R.R.'s January 26, 2015 initial evaluation, Iannuccilli reported R.R.'s cervical spine revealed range of motion restriction and thoraco-lumbar spine region revealed range of motion restriction.

401.    As with almost every patient at issue in this Complaint, Iannuccilli reported range of motion restriction without documenting any specifics regarding how or why the patient's range of motion was restricted.

402.    Iannuccilli also assessed R.R. with cervical, thoracic, and lumbar sprain/strain.

403.    R.R. was also determined to be totally disabled for approximately four (4) weeks with Iannuccilli failing to document his ADL other than notating generally that "[R.R.'s pain] interferes with his sleep."

404.    Iannuccilli used these findings during R.R.'s purported initial evaluation to falsely justify the subsequent predetermined treatment protocol plan of:

> The patient's treatment will consist of spinal manipulation to restore appropriate joint mobility and a combination of electrotherapy, ultrasound, ice & heat, traction, and other modalities when indicated.  In conjunction with the office-based therapies, home therapies including the restriction of activities, instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises will be given to the patient.  The

patient will be seen three times a week for four weeks, at which
time he will be reevaluated.

405.    However, Iannuccilli did not follow her own treatment plan as R.R. never

received traction or ultrasound treatment, thereby confirming that Iannuccilli's treatment plan

was predetermined and merely inserted into each patient's initial examination as a *pro forma*

matter.

406.    The defendants failed to properly record R.R.'s response to the treatment

purportedly rendered, instead routinely stating that "[R.R.]'s condition persists."

407.    R.R.'s medical record is also devoid of a single reference to the "instruction in the

use of therapeutic aids, proper body mechanics as well as therapeutic exercises" that Iannuccilli

listed in her predetermined treatment plan.

408.    In fact, R.R.'s diagnosis, prognosis, and treatment plan did not change during the

course of his purported treatment at Arianna Iannuccilli, D.C., Inc.

409.    Thus, the defendants failed to establish the medical necessity of treatment

rendered, if treatment was rendered at all, and further fail to indicate how the treatment was

designed to affect R.R.'s specific patient care.

410.    R.R. was discharged from Arianna Iannuccilli, D.C., Inc. on April 13, 2015 after

Malek determined "[R.R.]'s condition persists" on April 13, 2015.

411.    Arianna Iannuccilli, D.C., Inc. submitted charges for the treatment purportedly

rendered to R.R. as follows: (1) CPT Code 97010 – hot/cold packs; (2) CPT Code 97014 –

electrical stimulation (unattended); and (3) CPT Code 98941 – spinal CMT 3-4 regions from

January 28, 2015 until on or about April 13, 2015.

412.    Arianna Iannuccilli, D.C., Inc.'s bill was submitted to R.R.'s personal injury

attorney, who in turn used the U.S. Mail to submit that bill to Allstate demanding payment for

the treatment purportedly rendered by Arianna Iannuccilli, D.C., Inc. as part of a settlement demand.

413.    Arianna Iannuccilli, D.C., Inc. and Iannuccilli were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to R.R. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mail.

414.    In reliance on the statements made and medical records contained in the settlement demand submitted on R.R.'s behalf, and on the treatment purportedly rendered to R.R. by the defendants, Allstate tendered a settlement payment on behalf of R.R. in the amount of $7,500, of which $1,474.40 was attributable to the defendants' treatment of R.R.

415.    The monies collected by the defendants relative to R.R. were derived from the settlement funds that R.R.'s personal injury attorney induced Allstate to pay based on the representations made in the May 22, 2012 settlement demand submitted to Allstate, including the Arianna Iannuccilli, D.C., Inc. bills.

416.    Arianna Iannuccilli, D.C., Inc. created claims for payment and medical records relative to the treatment purportedly rendered to R.R. that were sent to Allstate through the U.S. Mail.

417.    Because the treatment was merely the product of the defendants' scheme to defraud, the defendants are not entitled to retain any of the proceeds they collected from Allstate's settlement of R.R.'s claim.

### 6.    Patient L.F.   (Claim No. 0394272777)

418.    Patient L.F. presented at Arianna Iannuccilli, D.C., Inc. on or about December 2, 2015 following his alleged involvement in a motor vehicle accident on November 25, 2015.

419.    During L.F.'s December 2, 2015 initial evaluation, Iannuccilli reported L.F.'s "cervical upper thoracic spine," lumbar spine, and left shoulder revealed range of motion restriction.

420.    As with almost every patient at issue in this Complaint, Iannuccilli reported range of motion restriction without documenting any specifics regarding how or why the patient's range of motion was restricted.

421.    Iannuccilli also assessed L.F. with cervical, thoracic, lumbar, and left shoulder sprain/strain.

422.    L.F. was also determined to be partially disabled with Iannuccilli failing to document his ADL other than notating generally that "[L.F's pain] interferes with his sleep and daily routine."

423.    Iannuccilli used these findings during L.F.'s purported initial evaluation to falsely justify the subsequent predetermined treatment protocol plan of:

> The patient's treatment will consist of spinal manipulation to restore appropriate joint mobility and a combination of electrotherapy, ultrasound, ice & heat, traction, and other modalities when indicated.  In conjunction with the office-based therapies, home therapies including the restriction of activities, instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises will be given to the patient.  The patient will be seen three times a week for four weeks, at which time he will be reevaluated.

424.    However, Iannuccilli did not follow her own treatment plan as L.F. never received ultrasound treatment, thereby confirming that Iannuccilli's treatment plan was predetermined and merely inserted into each patient's initial examination as a *pro forma* matter.

425.    The defendants failed to properly record L.F.'s response to the treatment purportedly rendered, instead routinely stating that "[L.F.]'s condition persists."

426.   L.F.'s medical record is also devoid of a single reference to the "instruction in the use of therapeutic aids, proper body mechanics as well as therapeutic exercises" that Iannuccilli listed in her predetermined treatment plan.

427.   In fact, L.F.'s diagnosis, prognosis, and treatment plan did not change during the course of his purported treatment at Arianna Iannuccilli, D.C., Inc.

428.   Thus, the defendants failed to establish the medical necessity of treatment rendered, if treatment was rendered at all, and further fail to indicate how the treatment was designed to affect L.F.'s specific patient care.

429.   L.F. was discharged from Arianna Iannuccilli, D.C., Inc. on February 29, 2016 after Iannuccilli determined "[L.F.]'s condition persists" on February 17, 2016, the second to last time L.F. presented to Arianna Iannuccilli, D.C., Inc.

430.   Arianna Iannuccilli, D.C., Inc. submitted charges for the treatment purportedly rendered to L.F. as follows: (1) CPT Code 97010 – hot/cold packs; (2) CPT Code 97014 – electrical stimulation (unattended); (3) CPT Code 98941 – spinal CMT 3-4 regions; and (4) CPT Code 97012 – mechanical traction from December 4, 2015 until on or about February 17, 2016.

431.   Arianna Iannuccilli, D.C., Inc.'s bill was submitted to L.F.'s personal injury attorney, who in turn used the U.S. Mail to submit that bill to Allstate demanding payment for the treatment purportedly rendered by Arianna Iannuccilli, D.C., Inc. as part of a settlement demand.

432.   Arianna Iannuccilli, D.C., Inc. and Iannuccilli were aware that the U.S. Mail would be used to submit their fraudulent records and bills relative to L.F. to Allstate as it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit and to have submitted their demands for payment to insurers (including Allstate) through the U.S. Mail.

433.    Allstate relied upon submissions generated by the defendants and knowingly mailed on their behalf to Allstate in adjusting L.F.'s claim.

434.    Arianna Iannuccilli, D.C., Inc. created claims for payment and medical records relative to the treatment purportedly rendered to L.F. that were sent to Allstate through the U.S. Mail.

435.    Because the treatment was merely the product of the defendants' scheme to defraud, the defendants are not entitled to retain any of the proceeds they collected from Allstate's settlement of L.F.'s claim.

## VII.    SPECIFIC ALLEGATIONS OF MISREPRESENTATIONS MADE TO AND RELIED ON BY ALLSTATE

### A.    MISREPRESENTATIONS BY THE DEFENDANTS

436.    To induce Allstate to pay promptly their fraudulent charges, the defendants submitted or caused to be submitted to Allstate false medical documentation that materially misrepresented that the medical services they allegedly provided were actually rendered, necessary, and lawful.

437.    Each time the defendants created bills and medical records supporting their claims for payment that they knew would be mailed to insurers (like Allstate), the defendants necessarily warranted that such bills and records related to reasonable and necessary chiropractic treatment in compliance with Rhode Island law.

438.    In fact, the treatment rendered by the defendants was rarely necessary, if it was rendered at all.

439.    As detailed *supra*, the defendants frequently violated established standards of care, treated excessively and pursuant to a predetermined protocol, unlawfully solicited patients

who were not in need of medical treatment, and rendered treatment without adequate substantiation.

440.    Iannuccilli, Capaldi, and Malek also violated the Rhode Island chiropractic regulations by engaging in unprofessional conduct each time they willfully made and submitted false chiropractic reports or records to Allstate to falsely claim patients received comprehensive examinations and chiropractic manipulations that were never performed, *see* R.I. Gen. Laws § 5-37-5.1(8) and (16); willfully misrepresented the treatment rendered to patients at issue in this Complaint by submitting falsified chiropractic records to Allstate, *see* R.I. Gen. Laws § 5-37-5.1(14); and failed to conform to the minimal standards of chiropractic care by rendering medically unnecessary chiropractic treatment to patients at issue in this Complaint resulting from a predetermined treatment protocol established by the defendants, *see* R.I. Gen. Laws § 5-37-5.1(19).

441.    All of the above factors negate the necessity of the treatment allegedly rendered by the defendants.

442.    Taken as a whole, the prevalence of such facts and the defendants' failure to abide by accepted standards of chiropractic care render the treatment allegedly provided by the defendants unnecessary.

443.    The fact of violations of medical standards is present with respect to almost every patient at issue in this Complaint, including those specific patient examples set out above and in Exhibit 1.

444.    Thus, each claim for payment (and accompanying medical records) sent to Allstate by, on behalf of, or with the knowledge of the defendants constitutes a misrepresentation

because the treatment underlying the claim was not medically necessary, as it must be in order to be compensable under Rhode Island law.

445.    Iannuccilli, Capaldi, and Malek each submitted false chiropractic records to Allstate for collection of fees for which services were not rendered and each submission of false chiropractic records through the U.S. Mail was "a false claim or deceptive claim or misrepresenting a material fact" that Allstate relied upon when "determining [Arianna Iannuccilli, D.C.'s] rights to health care or other benefits."  *See* R.I. Gen. Laws § 5-37-5.1(16).

446.    Accordingly, Arianna Iannuccilli, D.C., Inc. was not eligible to receive payments from Allstate for the purported treatment rendered to patients involved in motor vehicle accidents and Allstate is entitled to a return of monies paid for the treatment rendered that violated Rhode Island law.

447.    Allstate's Complaint alleges no less than three (3) separate reasons why the defendants' treatment was unlawful:

    a.    The defendants billed Allstate for patient examinations and chiropractic manipulation treatment that was not actually rendered.  Patients have confirmed to Allstate that no chiropractor at Arianna Iannuccilli, D.C., Inc. performed a comprehensive examination, notwithstanding the fact that Allstate received bills from the defendants for purported examinations.  Furthermore, patients at issue in this Complaint confirmed that they did not receive chiropractic manipulation treatment on dates of service for which Allstate was billed for the chiropractic manipulation treatment.    Iannuccilli, Capaldi, and Malek each engaged in "unprofessional conduct" each time they submitted, or caused to be submitted, medical records that were created for the sole purpose of falsely supporting the fact that patient examinations and chiropractic manipulation treatment were performed at Arianna Iannuccilli, D.C., Inc., in an attempt to collect fees for services that were not rendered.  *See* R.I. Gen. Laws § 5-37-5.1(16).

    b.    The defendants unlawfully obtained patients who did not otherwise need medical treatment via their improper relationships with Rhode Island

personal injury attorneys.  Patients at issue in this Complaint provided statements to Allstate confirming that Rhode Island personal injury attorneys directed the patient to Arianna Iannuccilli, D.C., Inc. to receive treatment from the defendants.  "Soliciting professional patronage by agents or persons or profiting from acts of those representing themselves to be agents of the licensed [chiropractor]" is considered "unprofessional conduct" in the State of Rhode Island.  R.I. Gen. Laws § 5-37-5.1(11).  The defendants' main goal in treating patients that were obtained through unlawful methods was to perform as much treatment as early and often as possible, regardless of whether such treatment was reasonable and necessary to each individual patient, in order to inflate and bolster bills and settlement demands submitted to insurers like Allstate.  The defendants then knowingly submitted these bills to Rhode Island personal injury attorneys who in turn used the U.S. Mail to submit these bills to Allstate demanding payment for the treatment purportedly rendered by Arianna Iannuccilli, D.C., Inc. as part of a settlement demand. A chiropractor engages in unprofessional conduct any time he/she "[d]ivid[es] fees or agree[s] to split or divide the fees received for professional services for any person for bringing to or referring a patient." R.I. Gen. Laws § 5-37-5.1(12).  Allstate is not required to compensate the defendants for medically unnecessary treatment rendered to patients who were obtained through unlawful methods.

c.     The defendants billed Allstate for fraudulent, unnecessary, and excessive chiropractic treatment unnecessary for at least one or more of the following reasons: (1) patients presented to Arianna Iannuccilli, D.C., Inc. at the direction of Rhode Island personal injury attorneys and not due to medical need; (2) treatment was rendered pursuant to a predetermined protocol that necessarily failed to take into account each patient's unique symptoms and clinical needs; and (3) treatment was excessive as it related to the injury.  Each patient was assessed as having extremely similar reports of symptoms, objective findings, and assessments regardless of the type of accident and regardless of each patient's age, sex, and pre-accident condition.  Iannuccilli, Capaldi, and Malek each utilized a global template treatment plan that was not individualized or patient-specific.  The chiropractic treatment that was routinely delivered to each patient was not linked to a goal-oriented treatment approach and there was no evidence of a plan for discharge from ongoing treatment for the vast majority of the patients at issue herein.  Iannuccilli, Capaldi, and Malek engaged in unprofessional conduct every time they rendered "medically unnecessary services" through "any departure from, or the failure to conform to, the minimal standards of acceptable and prevailing medical practice in [their] area of expertise as is determined by the board."  R.I. Gen. Laws § 5-37-5.1(19).  Allstate is not required to compensate the defendants for medically unnecessary treatment rendered in violation of Rhode Island law.

448.    Moreover, each Health Insurance Claim Form ("HICF" and also known as the "CMS-1500" form) submitted to Allstate by the defendants for first-party claims contained the following notation: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

449.    Through the submission of patient records, invoices, HICFs, and other medical documentation to Allstate via the U.S. Mail (both mailed directly by the defendants and mailed by the personal injury attorneys with whom the defendants had *quid pro quo* relationships with the knowledge of the defendants), the defendants attested to the fact and medical necessity of the visits, examinations, interviews, screenings, testing, procedures, and ancillary services for which they billed Allstate.

450.    As the defendants did not render lawful and reasonably necessary medical treatment, and as they misrepresented the services purportedly rendered, each bill and accompanying record mailed by or on behalf of the defendants to Allstate constitutes a material misrepresentation.

451.    Every time Iannuccilli, Capaldi, and Malek mailed, or caused to be mailed, or knew that fabricated medical records would be mailed that were used to falsely support bills submitted to Allstate constitutes a material misrepresentation that the defendants were compliant with all applicable Rhode Island laws governing chiropractors and healthcare professionals when in fact they were not.

452.    As licensed healthcare professionals, Iannuccilli, Capaldi, and Malek were obligated, legally and ethically, to act honestly, with integrity, and in accordance with their professional oaths and pledges and Rhode Island law.

453.     Each misrepresentation made by Iannuccilli, Capaldi, and Malek was in violation of their legal and ethical obligations as healthcare professionals and in violation of Rhode Island law.

454.     At all times relevant to this Complaint, Iannuccilli, Malek, and Capaldi acted with intent to conceal from Allstate their misconduct in connection with the scheme described herein.

### B.     ALLSTATE'S JUSTIFIABLE RELIANCE

455.     The facially valid documents submitted to Allstate by and on behalf of the defendants were designed to, and did in fact, induce Allstate to rely on the veracity of such documents.

456.     At all relevant times, the defendants concealed from Allstate facts regarding the fact, lawfulness, and medical necessity of medical services allegedly provided to prevent Allstate from discovering that the claims submitted by or on behalf of the defendants were not compensable.

457.     These misrepresentations include submitting false medical documentation, including HICFs, documenting the fact and necessity of medical treatment in order to seek reimbursement.

458.     Evidence of the fraudulent scheme detailed herein was not discovered until after patterns had emerged and Allstate began to investigate the defendants, revealing the true nature and full scope of their fraudulent scheme.

459.     Due to the defendants' material misrepresentations and other affirmative acts designed to conceal their fraudulent scheme from Allstate, Allstate did not discover and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

460.    Further, much of the information regarding billing for services not rendered, unlawful solicitation, and excessive/unnecessary treatment lies within the exclusive knowledge and control of the defendants.

461.    In reliance on the defendants' misrepresentations, Allstate paid money to and on behalf of the defendants to its detriment.

462.    Allstate would not have paid these monies had the defendants provided true and accurate information about the fact, lawfulness, and necessity of the services they allegedly provided.

463.    As a result, Allstate has paid in excess of $755,253 to Arianna Iannuccilli, D.C., Inc. since 2010 in reasonable reliance on the false medical documentation and false representations made by the defendants.  *See* Exhibits 3 and 4.

## VIII.   SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

464.    As discussed above, the referrals, treatment, and services purportedly provided by the defendants were not actually provided, were not medically necessary, and were unlawful.

465.    The business of providing services by Arianna Iannuccilli, D.C., Inc. is regularly conducted by fraudulently seeking reimbursement to which the defendants are not entitled through the use of fraudulent communications sent via the U.S. Mail.

466.    In other words, discrete (claim- and patient-specific) instances of mail fraud are a regular way of doing business for Arianna Iannuccilli, D.C., Inc.

467.    Arianna Iannuccilli, D.C., Inc., at the direction and with the knowledge of its owners and managers Iannuccilli, Malek, and Capaldi, continues to submit claims for payment to Allstate.

468.    Thus, the defendants' instances of mail fraud continue.

469.    The objective of the scheme to defraud Allstate, which occurred throughout the period noted in Exhibit 1 (2010 to present), was to collect payments to which the defendants were not entitled because the medical services rendered, if at all, were not necessary and were not lawful.

470.    This objective necessarily required the submission of claims to Allstate.

471.    The defendants created, prepared, and submitted false medical documentation and placed in a post office and/or authorized depository for mail matter things to be sent and delivered by the United States Postal Service.

472.    The defendants also created, prepared, and submitted false medical documentation to Rhode Island personal injury attorneys who in turn used the U.S. Mail to submit the false medical documentation to Allstate demanding payment for treatment purportedly rendered by the defendants as part of a settlement demand.

473.    At all times relevant to this Complaint, the defendants acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of Rhode Island personal injury attorneys submitting the false medical documentation created by the defendants to bolster settlement payment demands to Allstate.

474.    At all times relevant to this Complaint, the defendants acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of the operation of Arianna Iannuccilli, D.C., Inc.

475.    All documents, medical records, notes, reports, HICFs, medical diagnoses, letters, correspondence, and requests for payment in connection with the insurance claims referenced throughout this pleading traveled through the U.S. Mail.

476.     Every automobile insurance claim detailed herein involved at least one use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claims settlement checks, and the return of the cancelled settlement drafts to the financial institution(s) from which the draft(s) were drawn.

477.     The fraudulent medical billing scheme detailed herein generated hundreds of mailings.

478.     A chart highlighting representative examples of mail fraud arising from the defendants' patient/business files is annexed hereto at Exhibit 5.

479.     As detailed herein, the defendants also submitted, caused to be submitted, or knew medical documentation and claims for payment would be submitted to Allstate related to each exemplar patient discussed in this Complaint.

480.     As all of the defendants named herein agreed that they would use (and, in fact, did use) the mails in furtherance of their scheme to defraud Allstate by seeking payment for services that are not compensable, these defendants committed mail fraud, as defined in 18 U.S.C. § 1341.

481.     The defendants also knew that Allstate would use the U.S. Mail in connection with each of the claims identified in this Complaint and the exhibits annexed hereto, including issuing payments based upon the representations contained in the false medical documentation and settlement demands created by the defendants and submitted by Rhode Island personal injury attorneys through the U.S. Mail to Allstate.

482.     Allstate reasonably relied on the submissions it received from the defendants through the U.S. Mail in tendering payment to Arianna Iannuccilli, D.C., Inc., including the

representative submissions set out in Exhibit 5 annexed hereto and identified in the exemplar claims above.

483.   As the defendants agreed to pursue the same criminal objective (namely, mail fraud), they committed a conspiracy within the meaning of the RICO Act, 18 U.S.C. § 1962(d), and are therefore jointly and severally liable for Allstate's damages.

## IX.   DAMAGES

484.   Allstate's claim for compensatory damages includes (a) payments made by Allstate directly to Arianna Iannuccilli, D.C., Inc. in reliance upon the defendants' false representations regarding the fact, lawfulness, and necessity of the treatment for which they directly billed Allstate (i.e., first-party claims); and (b) payments made by Allstate to the defendants' patients via the settlement of bodily injury claims that were based on the misrepresentation-laden bills and records from the defendants (i.e., third-party claims).

485.   The pattern of fraudulent conduct by the defendants, the goal of which was to target insurers, injured Allstate in its business and property by reason of the aforesaid violations of law.

486.   Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation, and Allstate's damages continue to accrue, Allstate's injury includes, but is not limited to, total compensatory damages in excess of $755,253.

487.   Exhibit 3, annexed hereto and incorporated herein as if set forth in its entirety, identifies $78,329.12 in first-party claims monies paid by Allstate to Arianna Iannuccilli, D.C., Inc. (for the benefits of all of the defendants) by date, payor, payee, patient claim number, check number, and amount.

488.     Exhibit 4, annexed hereto and incorporated herein as if set forth in its entirety, identifies $676,924.81 in third-party claims monies paid by Allstate as the result of bills submitted by Arianna Iannuccilli, D.C., Inc. to Rhode Island personal injury attorney who in turn mailed those bills in demanding payment from Allstate as part of a settlement demand.

489.     Every payment identified in Exhibits 3 and 4 was made by Allstate alone and Allstate has not been reimbursed for any of the payments itemized in Exhibits 3 and 4.

490.     Allstate's damages seek only monies paid directly to the defendants or on their behalf by Allstate, and the damages are not derivative of an injury to any other person or entity. The patients at issue in this Complaint were used as pawns by the defendants and have been victimized by the defendants' unlawful solicitation and by having to endure months of unnecessary treatment.   However, the actual target of the defendants' scheme – and the sole party who received fraudulent mailings as itemized in the exemplar claims and in Exhibit 5 – is Allstate.   Allstate alone paid every penny pleaded as damages herein.   Thus, injury to Allstate was the intended, direct, and actual result of the defendants' scheme to defraud.   Injury to Allstate was also the reasonably probable consequence of the defendants' actions, as it was in the ordinary course of the defendants' business to collect insurance proceeds.

491.     Allstate also seeks damages, in an amount to be determined at trial, related to the cost of investigation to uncover the fraudulent activities of the defendants and the cost of claims handling/adjustment for claims submitted by the defendants.

492.     Allstate investigated each of the defendants both individually and in connection with the comprehensive scheme detailed herein and incurred investigative and claims handling expenses with respect to each defendant.

X.      **CAUSES OF ACTION**

**COUNT I**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**(Arianna Iannuccilli, D.C., Inc. Enterprise)**
**Against Arianna Iannuccilli, D.C., Kiara M. Capaldi, D.C., and Amy M. Malek, D.C.**

493.    Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 492 set forth above as if fully set forth herein.

494.    Arianna Iannuccilli, D.C., Inc. constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

495.    Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation, and Allstate's damages continue to accrue, Allstate's injury includes, but is not limited to, damages in excess of $755,253.

496.    Arianna Iannuccilli, D.C., Kiara M. Capaldi, D.C., and Amy M. Malek, D.C. ("Count I defendants") participated in the conduct of the Arianna Iannuccilli, D.C., Inc. enterprise.

497.    Iannuccilli is the owner of Arianna Iannuccilli, D.C., Inc. and exercised control over patient treatment at Arianna Iannuccilli, D.C., Inc. at all relevant times.

498.    Capaldi and Malek were involved in rendering and facilitating the medically unnecessary treatment, when treatment was in fact rendered, at Arianna Iannuccilli, D.C., Inc.

499.    The proceeds of the ill-gotten payments from Allstate to Arianna Iannuccilli, D.C., Inc. were shared by all of the Count I defendants.

500.    Indeed, auto insurance payments were used directly to pay the salaries and fees of Iannuccilli, Capaldi, and Malek.

501.    Thus, by their participation in the Arianna Iannuccilli, D.C., Inc. enterprise, the Count I defendants intentionally caused to be prepared and mailed false medical documentation

by Arianna Iannuccilli, D.C., Inc., or knew that such false medical documentation would be mailed in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business, or should have reasonably foreseen that the mailing of such false medical documentation by Arianna Iannuccilli, D.C., Inc. and/or by a personal injury attorney on behalf of a patient of the defendants would occur.

502.   The instances where the Count I defendants utilized, caused to be utilized, and/or knew that the mails would be utilized by or on behalf of Arianna Iannuccilli, D.C., Inc. to submit fraudulent demands for payment and false medical records number in the hundreds, including those specific instances detailed with respect to the exemplar claims above and in Exhibit 5 annexed hereto, and occurred during the period of time each of the Count I defendants was affiliated with Arianna Iannuccilli, D.C., Inc.

503.   As detailed *supra* in sections VII and VIII, the bills and medical records submitted to Allstate through the U.S. Mail contain material misrepresentations as to the fact, necessity, and lawfulness of the treatment billed for by Arianna Iannuccilli, D.C., Inc., including falsely warranting Arianna Iannuccilli, D.C., Inc.'s eligibility to seek and obtain payments from Allstate for treatment that was never rendered and, when in fact rendered, medically unnecessary.

504.   These misrepresentations, representative examples of which are contained in the exemplar claims above and at Exhibit 5, were made by each of the Count I defendants.

505.   Indeed, it was in the ordinary course of Arianna Iannuccilli, D.C., Inc.'s business to submit bills and medical records to auto insurers like Allstate through the U.S. Mail, as each of the Count I defendants knew.

506.    The Count I defendants employed, knew, or should have foreseen that two or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart annexed hereto at Exhibit 5.

507.    Payments to and on behalf of Arianna Iannuccilli, D.C., Inc. from Allstate, made in reliance on the fraudulent demands for payment, were also transmitted through the U.S. Mail.

508.    As a result of, and in reasonable reliance on, the misleading documents and representations, Allstate, by its agents and employees, issued drafts to and in consideration of Arianna Iannuccilli, D.C., Inc. for the benefit of the Count I defendants that would not otherwise have been paid.

509.    The Count I defendants' pattern of submitting, causing to be submitted, or knowing that fraudulent claims that appeared legitimate on their face would be submitted prevented Allstate from discovering the fraudulent scheme for a long period of time, thus enabling the Count I defendants to continue their fraudulent scheme without detection.

510.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

511.    By mailing, and knowing that the mails would be used to submit, numerous fraudulent claims in an ongoing scheme, the Count I defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

512.    Allstate is a "person," as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I defendants' fraudulent acts.

513.    The Count I defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

514.     Indeed, Allstate would not have tendered any monies to and for the benefit of Arianna Iannuccilli, D.C., Inc. (for the benefit of the Count I defendants) had the Count I defendants not submitted, caused to be submitted, or knew that false medical documentation and fraudulent demands for payment to Allstate would be sent through the U.S. Mail.

515.     By virtue of the Count I defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted, by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
**(Arianna Iannuccilli, D.C., Inc. Enterprise)**
**Against Arianna Iannuccilli, D.C., Kiara M. Capaldi, D.C., and Amy M. Malek, D.C.**

516.     Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 492 set forth above as if fully set forth herein.

517.     Defendants Arianna Iannuccilli, D.C., Kiara M. Capaldi, D.C., and Amy M. Malek, D.C. ("Count II defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Arianna Iannuccilli, D.C., Inc.

518.     The Count II defendants each agreed to further, facilitate, support, and/or operate the Arianna Iannuccilli, D.C., Inc. enterprise.

519.     As such, the Count II defendants conspired in violation of 18 U.S.C. § 1962(d).

520.     The purpose of the conspiracy was to obtain payments from Allstate on behalf of Arianna Iannuccilli, D.C., Inc. even though Arianna Iannuccilli, D.C., Inc. was not eligible to collect payments by virtue of its conduct.

521.   The Count II defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Allstate of insurance claims and medical records containing material misrepresentations.

522.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make payments as a result of the Count II defendants' unlawful conduct described herein.

523.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count II defendants are jointly and severally liable to Allstate and Allstate is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count II defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT III
### FRAUDULENT MISREPRESENTATION
### Against All Defendants

524.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 492 set forth above as if fully set forth herein.

525.   The scheme to defraud Allstate perpetrated by the defendants was dependent upon a succession of material misrepresentations of fact that Arianna Iannuccilli, D.C., Inc. was actually and lawfully rendering medically necessary treatment and services in compliance with Rhode Island statutes and was entitled to collect benefits from Allstate.

526.   The misrepresentations made by the defendants include, but are not limited to, those material misrepresentations discussed *supra* in Section VII.

527.     The misrepresentations were intentionally made by the defendants in furtherance of their scheme to defraud and deceive Allstate by submitting, causing to be submitted, and/or knowing that non-compensable claims for payment would be submitted to Allstate.

528.     The defendants' misrepresentations were known to be false and were made for the purpose of inducing Allstate to make payments for claims that are not compensable.

529.     Allstate justifiably relied upon such material misrepresentations to its detriment in paying numerous non-meritorious bills for medical expenses pursuant to insurance claims and in incurring expenses related to the adjustment and processing of claims submitted by the defendants.

530.     As a direct and proximate result of the defendants' fraudulent representations and acts, Allstate has been damaged as previously described herein and as set out in Exhibits 3 and 4.

**COUNT IV**
**CIVIL CONSPIRACY**
**Against All Defendants**

531.     Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 492 set forth above as if fully set forth herein.

532.     Defendants Arianna Iannuccilli, D.C., Kiara M. Capaldi, D.C., Amy M. Malek, D.C., and Arianna Iannuccilli, D.C., Inc. (Count IV Defendants) combined and concerted to accomplish the unlawful purpose of defrauding Allstate by submitting claims for reimbursement to which they were not entitled because (1) patients were unlawfully solicited to treat at Arianna Iannuccilli, D.C., Inc. when they were not actually in need of treatment; (2) the treatment was rendered based on a predetermined treatment protocol where the defendants prescribed treatment sessions multiple times a week regardless of each patient's age, medical history, and/or complaints; and (3) treatment was billed to Allstate that was never performed.

533.    The Count IV defendants worked together to achieve an unlawful purpose (namely, defrauding Allstate for personal gain).

534.    This purpose was known to all of the Count IV defendants and intentionally pursued.

535.    Despite knowing that the defendants were not entitled to reimbursement because they billed for services that were not performed and, if performed, were not reasonably necessary, the Count IV defendants nonetheless submitted, caused to be submitted, and knew that claims would be submitted (with accompanying false medical documentation) to Allstate seeking payment to the defendants.

536.    In reasonable reliance on the false medical documentation submitted by the defendants, Allstate paid certain of the claims submitted.

537.    All of the Count IV defendants directly benefited from the payments made to Arianna Iannuccilli, D.C., Inc.

538.    Therefore, the Count IV defendants committed acts that caused damage to Allstate.

539.    All of the Count IV defendants actively and intentionally partook in a scheme to defraud Allstate and also encouraged and aided other Count IV defendants in the commission of acts done for the benefit of all Count IV defendants and to the unjustified detriment of Allstate.

540.    Accordingly, all of the Count IV defendants are equally liable for the fraud perpetrated on Allstate pursuant to their conspiracy.

**COUNT V**
**UNJUST ENRICHMENT**
**Against Arianna Iannuccilli, D.C., Inc.**

541.    Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 492 set forth above as if fully set forth herein.

542.    Allstate paid monies to defendant Arianna Iannuccilli, D.C., Inc.,  including those amounts itemized in Exhibits 3 and 4, in response to the claims submitted by Arianna Iannuccilli, D.C., Inc. in reasonable belief that it was legally obligated to make such payments based upon the defendant's fraudulent misrepresentations.

543.    Allstate's payments constitute a benefit which Arianna Iannuccilli, D.C., Inc. aggressively sought and voluntarily accepted.

544.    Arianna Iannuccilli, D.C., Inc. wrongfully obtained payments from Allstate through the fraudulent scheme detailed herein.

545.    Arianna Iannuccilli, D.C., Inc. has been unjustly enriched by receipt of these wrongfully-obtained payments from Allstate.

546.    Arianna Iannuccilli, D.C., Inc.'s retention of these payments would violate fundamental principles of justice, equity, and good conscience.

**COUNT VI**
**DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**
**Against All Defendants**

547.    Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 492 set forth above as if fully set forth herein.

548.    Defendants Arianna Iannuccilli, D.C., Inc.; Arianna Iannuccilli, D.C.; Kiara M. Capaldi, D.C.; and Amy M. Malek, D.C. routinely performed, if at all, medically unnecessary treatment with respect to the patients at issue in this Complaint.

549.    The defendants also rendered medical treatment pursuant to a fraudulent scheme whereby patients were solicited and directed to Arianna Iannuccilli, D.C., Inc. for the purpose of generating claims to submit to auto insurers such as Allstate.

550.    Allstate is not required to pay for treatment not actually rendered, not lawfully rendered, and not medically necessary.

551.    The defendants continue to mail, and cause to be mailed, claims for unnecessary and/or unlawfully rendered medical services to Allstate, and other claims remain pending with Allstate.

552.    The defendants will continue to bill Allstate absent a declaration by this Court that their activities are unlawful and that Allstate has no obligation to pay pending and/or previously-denied claims submitted by any of the defendants.

553.    Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the defendants provided medically unnecessary treatment and Allstate is not required to compensate the defendants for such treatment.

554.    Allstate also requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the defendants were engaged in a fraudulent scheme whereby patients were actively solicited to treat at Arianna Iannuccilli, D.C., Inc., which directly led to unnecessary treatment.

555.    Allstate further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the defendants billed for treatment and services that were not actually provided.

556.    For each of these reasons, the defendants have no standing to submit, pursue, or receive payment from Allstate.

557.     A justifiable controversy exists between Allstate and the defendants whereas the defendants have demanded – and continue to demand – payment from Allstate.

558.     Allstate has no adequate remedy at law.

## XI.     DEMAND FOR RELIEF

WHEREFORE, plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company respectfully pray that judgment enter in their favor, as follows:

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### (Arianna Iannuccilli, D.C., Inc. Enterprise)
### Against Arianna Iannuccilli, D.C., Kiara M. Capaldi, D.C., and Amy M. Malek, D.C.

(a)     AWARD Allstate its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### (Arianna Iannuccilli, D.C., Inc. Enterprise)
### Against Arianna Iannuccilli, D.C., Kiara M. Capaldi, D.C., and Amy M. Malek, D.C.

(a)     AWARD Allstate its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Allstate injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT III
### FRAUDULENT MISREPRESENTATION
### Against All Defendants

(a)     AWARD Allstate its actual and consequential damages against the defendants in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT IV
### CIVIL CONSPIRACY
### Against All Defendants

(a)     AWARD Allstate its actual and consequential damages against the defendants in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT V
### UNJUST ENRICHMENT
### Against Arianna Iannuccilli, D.C., Inc.

(a)     AWARD Allstate its actual and consequential damages in an amount to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

## COUNT VI
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against All Defendants

(a)       DECLARE that the defendants wrongfully submitted bills for medical treatment that was not actually performed, was not reasonably necessary, and was unlawful and, therefore, Allstate is not required to compensate the defendants;

(b)       DECLARE that the activities of the defendants were fraudulent and in violation of Rhode Island law;

(c)       DECLARE that the defendants knowingly and intentionally disregarded Rhode Island law prohibiting the solicitation of patients;

(d)       DECLARE that Allstate has no obligation to pay pending and/or previously-denied insurance claims submitted by or on behalf of the defendants; and

(e)       GRANT all other relief this Court deems just and appropriate.

## XII.   JURY DEMAND

The plaintiffs hereby demand a trial by jury on all claims.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

SMITH & BRINK, P.C.

*/s/ Richard D. King, Jr.*

_____
Richard D. King, Jr. (R.I. Bar No. 6084)
rking@smithbrink.com
Nathan A. Tilden (R.I. Bar No. 6428)
ntilden@smithbrink.com
Jacquelyn A. McEttrick, *pro hac vice* pending
jmcettrick@smithbrink.com
John D. Tertan, *pro hac vice* pending
jtertan@smithbrink.com
200 Midway Road, Suite 169
Cranston, RI 02920

350 Granite St., Suite 2303
Braintree, MA 02184
(617) 770-2214

*Attorneys for Plaintiffs*
*Allstate Insurance Company, Allstate Indemnity*
*Company, Allstate Property and Casualty Insurance*
*Company, and Allstate Fire and Casualty Insurance*
*Company*

Dated: January 31, 2017